UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| V J COMPOUNDING CORPORATION, d/b/a L. CARLTON MERTZ, CO., an Illinois corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SENECA INSURANCE COMPANY, INC., a subsidiary of SENECA INSURANCE GROUP, INC., a Delaware corporation,<br><br>Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br>FILED: MARCH 25, 2008<br>08CV1738          PH<br>JUDGE KENNELLY<br>MAGISTRATE JUDGE COX |

Plaintiff, V J Compounding Corporation, d/b/a/ L. Carlton Mertz, Co., an Illinois corporation, through its attorneys, complains of Defendant, Seneca Insurance Company, Inc., a subsidiary of Seneca Insurance Group, Inc., a Delaware corporation, as follows:

The Parties

1.      Plaintiff, V J Compounding Corporation, d/b/a L. Carlton Mertz Co. (the "Plaintiff"), is an Illinois corporation duly licensed to do business in the State of Illinois and, until the incidents referenced herein, was conducting business at 6147 West 65th Street, Bedford Park, Illinois, 60636, as a manufacturer of industrial cleaning solutions. Plaintiff maintains it principal place of business at 9960 W. 191st Street, Unit K, Mokena, Illinois, 60448.

2.      Defendant, Seneca Insurance Company, Inc., a subsidiary for Seneca Insurance Group, Inc. (the "Defendant"), in a Delaware corporation with its principal place of business located in New York, New York.

Jurisdiction and Venue

3.      The parties are of diverse citizenship.

4.     The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

6.     The claims forming the basis of this Complaint, or a significant portion thereof, arose in that geographical area contained within the federal district known as the Northern District of Illinois.   Specifically, the parties in substantial part entered into the insurance agreement which forms the basis of this Complaint in said District, and the covered loss which created Defendant's liability occurred in said District.

The Policy

7.     Defendant issued to Plaintiff Commercial Property Insurance Policy No. ESP 14 024 50 (the "Policy"), effective October 1, 2003, through October 1, 2004.  A true and correct copy of the Policy is attached hereto as Exhibit A.

8.     At all times relevant hereto, Plaintiff was current on its premium obligations under the Policy.

9.     At all times relevant hereto, Plaintiff satisfied all of its obligations and conditions under the Policy.

The Roof Collapse

10.     On March 5, 2004, the roof of Plaintiff's facility at 6147 West 65th Street in Bedford Park, Illinois (the "Facility"), partially collapsed due to wind and heavy rainfall (the "Roof Collapse").

11.     The Roof Collapse is a covered loss under the terms of the Policy.

CHILIB-2165929.1-999932-60001

The Claim

12.     As a direct and proximate result of the Roof Collapse, Plaintiff incurred the following losses:  (1) structural damage to the Facility, which Plaintiff owned; (2) loss of inventory located at the Facility; (3) business interruption with resultant loss; and (4) loss of business due to Defendant's failure and refusal to pay the amounts provided under the Policy.

13.     Plaintiff notified Defendant of the Roof Collapse immediately upon its occurrence.  Plaintiff notified Defendant through Defendant's local agent, Richard T. Scodro.

14.     Plaintiff submitted to Defendant a sworn statement of loss not later than April 1, 2004.

15.     Plaintiff has supplied all information reasonably requested by Defendant.

16.     Plaintiff has supplied Defendant with thousands of pages of documents requested by Defendant to support its claim, often resubmitting the same documentation two or three times.

17.     Plaintiff, through its president and owner Vishnu Gor ("Mr. Gor"), has had numerous meetings with Gregory A. Crapanzano ("Mr. Crapanzano") and other representatives of Defendant.

18.     Mr. Gor has undergone two days of sworn deposition testimony at the request of Defendant.

19.     Defendant has paid Plaintiff not more than $150,000 as a result of the Roof Collapse, which is a small fraction of Plaintiff's covered loss under the Policy.

20.     As a result of Defendant's wrongful refusal to pay the amount due under the Policy, Plaintiff was forced out of business with resulting and substantial additional loss.

CHILIB-2165929.1-999932-60001

<u>The Denial Letter</u>

21.    In a letter dated March 12, 2007, signed by Mr. Crapanzano (the "Denial Letter"), Defendant advised Plaintiff that Defendant does "hereby deny coverage" under the Policy.  A true and correct copy of the Denial Letter, as received by Plaintiff, is attached hereto as Exhibit B.

22.    In the Denial Letter, Defendant states as the basis for its denial as follows: "[Plaintiff] has violated the foregoing provisions of the Policy by failing to give costs, values and amounts of the losses claimed; provide books and records for examination; provide a proof of loss containing information requested to investigate the claim; return signed examination answers; and cooperate in the investigation of the claim."  These statements are false.

23.    Also in the Denial Letter, which is dated two years and one week after the date of the Roof Collapse, Defendant cites a provision of the Policy stating that, "[N]o one may bring a legal action against ("Defendant") under this Covered Part unless . . . the action is brought within two years after the date on which the direct physical loss or damage occurred," and then states that "legal against [Defendant] is precluded because . . . the time to file suit has expired."

24.    Defendant's claim of untimely filing of the instant action is false.  Specifically, the Illinois Insurance Code, 215 ILCS 5/143.1, provides that any period of limitations in a policy such as the Policy is tolled from the date proof of loss is filed until the date the claim is denied in whole or in part.

25.    Plaintiff demands trial by jury.

WHEREFORE, Plaintiff, V J Compounding Corporation, d/b/a L. Carlton Mertz, Co., prays for a judgment in its favor and against Defendant, Seneca Insurance Company, Inc., a subsidiary of Seneca Insurance Group, Inc., in the amount of it its losses resulting from the Roof

CHILIB-2165929.1-999932-60001

Collapse less any amounts actually paid to date, plus punitive damages to the extent permitted under the Policy and/or applicable law, plus attorneys' fees and costs to the extent permitted under the Policy and/or applicable law.

Dated: March 24 2008.

Respectfully submitted,

V J Compounding Corporation,
d/b/a/ L. Carlton Mertz Co.

By: _Timothy S Harris_____
    One of its Attorneys

Alexander Terras (ARDC No. 2810700)
Timothy S. Harris (ARDC No. 6198236)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

08CV1738   PH
JUDGE KENNELLY
MAGISTRATE JUDGE COX

# EXHIBIT A



**RBN & ASSOCIATES**
Insurance Brokers

# INSURANCE PORTFOLIO

## For

## L. CARLTON MERTZ CO.

## 6147 W. 65TH STREET

## CHICAGO, IL

PRESENTED BY:
RICHARD T. SCODRO
FEBRUARY, 2003



**RBN & ASSOCIATES**
Insurance Brokers

233 North Michigan Ave.
Suite 1780
Chicago, Illinois 60601
Phone 312•856•9400
Fax 312•856•9425

February 13, 2004

Ms. Rosanne Morinec
L. Carlton Mertz Co.
6147 W. 65th Street
Chicago, IL  60638-5303

Re:     Property Policy
        #ESP 14 024 50

Dear Rosanne:

Seneca Insurance Company, Inc. has issued your Property Policy effective October 1, 2003 through October 1, 2004.

Property coverage is written on a "Special Form" basis with exclusions including Flood, Earthquake, Plate Glass, Off Premise Power Interruption, Terrorism (Certified & Non-Certified & Non-Certified), War, Mold, Bacteria, Fungus, Property of Others, Computer Software and Data, Property Off-Premise, Goods in Transit ($5,000 sub-limit) Back-up of Sewers, Employee Dishonesty, Money, and Pollution Clean Up. Losses will be adjusted based on replacement cost values subject to a $5,000 deductible.

Property coverage's contain a Coinsurance provision, which requires you to insure 90% of the actual replacement value of your building and contents and 50% of annual business income value.  To insure less than this, will cause you to be considered a co-insurer and subject to monetary penalties imposed by the insurance carrier in the event of a claim.

Property coverage's include:      Building:                             $   900,000
                                  Contents:                             $   600,000
                                  Business Income / Extra Expense:      $1,000,000

If you should have any questions after your review of the enclosed material, please do not hesitate to contact our office.

Thank you for letting us represent your insurance interests.

Sincerely,

*Debra P. Owles*

Enclosures

# SENECA INSURANCE COMPANY, INC.
## COMMON POLICY DECLARATIONS

NEW

**cy #:** ESP 14 024 50
**Named Insured:** L. Carlton Mertz Co.

**Mailing Address:** 6147 W. 65th Street
Chicago, IL 60638

**Policy Period:** **From:** 10/01/2003 **To:** 10/01/2004 at 12:01 AM, Standard Time
at your mailing address shown.

**Business Description:** Contract Packaging

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

This policy consists of the following coverage parts for which a premium is indicated.
This premium may be subject to adjustment.

| | |
|---|---:|
| Commercial Property Coverage Part | $14,280.00 |
| Commercial General Liability Coverage Part | Not Covered |
| Terrorism - Mandatory | $720.00 |
| (Refer to your policy for a full explanation of coverages provided) | |
| Commercial Inland Marine Coverage Part | Not Covered |
| **Total** | **$15,000.00** |

**Forms and Endorsements Applicable to all Coverage Parts:**

IL 0017(11/98)   ESP011(04/97)   ESP021(04/97)   ESP038(05/97)   ESP039(05/97)
CP 0010(04/02)   CP 0090(07/88)   CP 0030(04/02)   CP 1030(04/02)   IL 0935(07/02)
IL 0118(07/02)   IL 0284(07/02)   IL 0971(11/02)   Total "Mold" Exclusion

**Minimum Earned: 25% Total See Form #ESP 011 (04/97).**

**Producer:** Travis-Pedersen & Assoc., Inc.     **Code:** 14016
**Address:** 300 S. Wacker Dr., Ste. 1100
**City, State, Zip:** Chicago, IL 60606     **Payment Plan:**
**Tel. #:** 312-360-9696     Agency Bill

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVER-
AGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**horized Representative:** *David A. Hansen*     **Date:** 10/10/2003   **At:** Chicago, IL
**ed By:** DH/mf     **Date:** 10/10/2003

Includes copyrighted material of Insurance Services Office, Inc.  Copyright, Insurance Services Office, Inc., 1983, 1984.

ESP 038 (05/97)

# SENECA INSURANCE COMPANY, INC.
## COMMERCIAL PROPERTY COVERAGE PART
### DECLARATIONS

| | | | |
|---|---|---|---|
| **Policy #:** | ESP 14 024 50 | **Producer:** | Travis-Pedersen & Assoc., Inc. |
| **Named Insured:** | L. Carlton Mertz Co. | **Eff. Date:** | 10/01/2003 |

## SCHEDULE OF INSURED LOCATIONS

| **Prem. # Bldg. #** | **Address, City, State, Zip** | **Construction/ Occupancy** | **Territory/ Tax Territory/ Protection Class** |
|---|---|---|---|
| 01-01 | 6147-59 W. 65th Street<br>Chicago, IL 60638 | Noncombustible/<br>Contract Packaging | 999,9999,2 |

## COVERED PROPERTY

| **Prem. # Bldg. #** | **Coverage** | **Limit of Ins.** |
|---|---|---|
| 01-01 | Building | $900,000 |
| 01-01 | Contents | $600,000 |
| 02-01 | Business Income/ Extra Expense | $1,000,000 |

## USE OF LOSS

| **Prem. # Bldg. #** | **Cause of Loss** |
|---|---|
| 01-01 | Special excluding Flood and Earthquake |

## COINSURANCE (Any coinsurance percentages shown below apply to Covered Property as indicated.)

| | |
|---|---|
| Real Property | 90% |
| Personal Property | 90% |
| Business Income/ Extra Expense | 50% |

## VALUATION FOR APPLICABLE COVERAGES

| | | | |
|---|---|---|---|
| Real Property | | Actual Cash Value | X  Replacement Cost Value |
| Personal Property | | Actual Cash Value | X  Replacement Cost Value |
| Business Income | X | Actual Loss Sustained | Monthly Limitation |
| Extra Expense | X | Actual Loss Sustained | Monthly Limitation |

## DEDUCTIBLES (Deductibles apply per occurrence)

| | |
|---|---|
| All Covered Causes of Loss | $5,000 |

ESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office, Inc. Copyright, Insurance Services Office, Inc., 1983, 1984.

ESP 039 (05/97)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 09 35 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

1. The failure, malfunction or inadequacy of:

   **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including micro-processors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

   **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

1. In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

2. Under the Commercial Property Coverage Part:

   **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

   **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc., 2001

IL 01 18 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99**, the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** The following is added to the **Legal Action Against Us** Condition:

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C.** If this policy covers:

1. The following in **a.** and **b.**, then Paragraphs **2.** and **3.** apply:

   **a.** Real property used principally for residential purposes up to and including a four family dwelling; or

   **b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

2. The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

   **a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

   **b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

      (1) You demanded the appraisal; and

      (2) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

3. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   **CONCEALMENT, MISREPRESENTATION OR FRAUD**

   **a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

      (1) Was made with actual intent to deceive; or

      (2) Materially affected either our decision to provide this insurance or the hazard we assumed.

   However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** This Coverage Part or Coverage Form is void if you or any other insured ("insured"), at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

      (1) This Coverage Part or Coverage Form;

      (2) The Covered Property;

      (3) Your interest in the Covered Property; or

      (4) A claim under this Coverage Part or Coverage Form.

   **c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in accordance with the terms of the Cancellation Condition.

© ISO Properties, Inc., 2001

D. For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

1. We will not pay for loss or damage arising out of any act committed:

   a. By or at the direction of any insured; and

   b. With the intent to cause a loss.

2. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

   a. The loss arose out of a pattern of criminal domestic violence; and

   b. The perpetrator of the loss is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **D.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

E. The **Intentional Loss Exclusion** in the Causes of Loss Form – Farm Property, Mobile Agricultural Machinery And Equipment Coverage Form and Livestock Coverage Form is replaced by the following:

1. We will not pay for loss ("loss") or damage arising out of any act committed:

   a. By or at the direction of any "insured"; and

   b. With the intent to cause a loss ("loss").

2. This exclusion, however, will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss ("loss") if:

   a. The loss ("loss") arose out of a pattern of criminal domestic violence; and

   b. The perpetrator of the loss ("loss") is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **E.2.**, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

© ISO Properties, Inc., 2001
IL 01 18 07 02     □

IL 02 84 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

A. The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs **9.** and **10.** below, we may cancel this policy by mailing written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs **9.** and **10.** below, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. You have violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, any mortgagee or lienholder known to us and to the agent or broker, at the last addresses known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. Proof of mailing will be sufficient proof of notice.

8. Our notice of cancellation will state the reason for cancellation.

9. **Real Property Other Than Residential Properties Occupied By 4 Families Or Less:**

   The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

© ISO Properties, Inc., 2001

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation at least 10 days before the effective date of cancellation.

a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

b. The building has been unoccupied 60 or more consecutive days. This does not apply to:

   (1) Seasonal unoccupancy; or

   (2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

c. The building has:

   (1) An outstanding order to vacate;

   (2) An outstanding demolition order; or

   (3) Been declared unsafe in accordance with the law.

d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

10. **Residential Properties Occupied By 4 Families Or Less:**

The following applies if this policy covers residential properties occupied by 4 families or less:

   If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

a. Nonpayment of premium;

b. The policy was obtained by misrepresentation or fraud; or

c. Any act that measurably increases the risk originally accepted.

11. For insurance provided under the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, the following applies:

   **GRAIN IN PUBLIC GRAIN WAREHOUSES**

   (Not applicable to grain owned by the Commodity Credit Corporation)

   The following applies only with respect to grain in public grain warehouses:

   The first Named Insured or we may cancel this policy at any time by mailing to:

a. The other; and

b. The Director of the Illinois Department of Agriculture (at its Springfield Office);

   60 days' written notice of cancellation.

B. The following is added:

   **NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal to your last mailing address known to us at least 60 days before the expiration date of the policy. A copy of the notice will also be sent to:

a. The broker, if known to us, or the agent of record; and

b. The last known mortgagee or lienholder named in the policy at the last mailing address known to us.

   This paragraph does not apply if we have manifested our willingness to renew directly to you.

2. The following provision applies only if this policy covers residential properties occupied by 4 families or less:

   If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

a. The policy was obtained by misrepresentation or fraud;

b. The risk originally accepted has measurably increased; or

c. You received 60 days' notice of our intent not to renew as provided in 1. above.

© ISO Properties, Inc., 2001

IL 02 84 07 02

COMMERCIAL PROPERTY
CP 00 10 04 02

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section H. – Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. **Building**, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

© ISO Properties, Inc., 2001

c. **Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns;

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This Paragraph **n.**, does not apply to your "stock" of prepackaged software.

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

© ISO Properties, Inc., 2001

CP 00 10 04 02

q. The following property while outside of buildings:

   (1) Grain, hay, straw or other crops;

   (2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

## 3. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

## 4. Additional Coverages

### a. Debris Removal

   (1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

   (2) Debris Removal does not apply to costs to:

      (a) Extract "pollutants" from land or water; or

      (b) Remove, restore or replace polluted land or water.

   (3) Subject to the exceptions in Paragraph (4), the following provisions apply:

      (a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      (b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

   (4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

      (a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

      (b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

   Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

   (5) Examples

   The following examples assume that there is no coinsurance penalty.

## Example #1

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

© ISO Properties, Inc., 2001

## Example #2

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| | ($80,000 - $500) | |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

### b. Preservation Of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

### d. Pollutant Clean Up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

### e. Increased Cost Of Construction

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

© ISO Properties, Inc., 2001

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates. the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

  (a) You were required to comply with before the loss, even when the building was undamaged; and

  (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

  (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

  (a) We will not pay for the Increased Cost of Construction:

    (i) Until the property is actually repaired or replaced, at the same or another premises; and

    (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same premises.

  (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(6) of this Additional Coverage, is not subject to such limitation.

f. **Electronic Data**

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

© ISO Properties, Inc., 2001    CP 00 10 04 02    □

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

 © ISO Properties, Inc., 2001

(b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

e. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

f. **Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

B. **Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

C. **Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

D. **Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

    © ISO Properties, Inc., 2001    CP 00 10 04 02    □

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100

–    250

$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1:   $    70,000

(exceeds Limit of Insurance plus Deductible)

Loss to Bldg. 2:   $    90,000

(exceeds Limit of Insurance plus Deductible)

Loss Payable – Bldg. 1:   $60,000

(Limit of Insurance)

Loss Payable – Bldg. 2:   $80,000

(Limit of Insurance)

Total amount of loss payable:

           $140,000

## E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties In The Event Of Loss Or Damage

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

© ISO Properties, Inc., 2001

Also permit us to take samples of dam-
aged and undamaged property for in-
spection, testing and analysis, and per-
mit us to make copies from your books
and records.

(7) Send us a signed, sworn proof of loss
containing the information we request to
investigate the claim. You must do this
within 60 days after our request. We will
supply you with the necessary forms.

(8) Cooperate with us in the investigation or
settlement of the claim.

b. We may examine any insured under oath,
while not in the presence of any other in-
sured and at such times as may be rea-
sonably required, about any matter relating
to this insurance or the claim, including an
insured's books and records. In the event of
an examination, an insured's answers must
be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by
this Coverage Form, at our option, we will
either:

(1) Pay the value of lost or damaged prop-
erty;

(2) Pay the cost of repairing or replacing the
lost or damaged property, subject to **b.**
below;

(3) Take all or any part of the property at an
agreed or appraised value; or

(4) Repair, rebuild or replace the property
with other property of like kind and qual-
ity, subject to **b.** below.

We will determine the value of lost or dam-
aged property, or the cost of its repair or re-
placement, in accordance with the applica-
ble terms of the Valuation Condition in this
Coverage Form or any applicable provision
which amends or supersedes the Valuation
Condition.

b. The cost to repair, rebuild or replace does
not include the increased cost attributable to
enforcement of any ordinance or law regu-
lating the construction, use or repair of any
property.

c. We will give notice of our intentions within
30 days after we receive the sworn proof of
loss.

d. We will not pay you more than your financial
interest in the Covered Property.

e. We may adjust losses with the owners of
lost or damaged property if other than you.
If we pay the owners, such payments will
satisfy your claims against us for the own-
ers' property. We will not pay the owners
more than their financial interest in the Cov-
ered Property.

f. We may elect to defend you against suits
arising from claims of owners of property.
We will do this at our expense.

g. We will pay for covered loss or damage
within 30 days after we receive the sworn
proof of loss, if you have complied with all of
the terms of this Coverage Part and:

(1) We have reached agreement with you
on the amount of loss; or

(2) An appraisal award has been made.

5. **Recovered Property**

If either you or we recover any property after
loss settlement, that party must give the other
prompt notice. At your option, the property will
be returned to you. You must then return to us
the amount we paid to you for the property. We
will pay recovery expenses and the expenses
to repair the recovered property, subject to the
Limit of Insurance.

6. **Vacancy**

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the
term building and the term vacant have
the meanings set forth in (1)(a) and
(1)(b) below:

(a) When this policy is issued to a ten-
ant, and with respect to that tenant's
interest in Covered Property, building
means the unit or suite rented or
leased to the tenant. Such building is
vacant when it does not contain
enough business personal property
to conduct customary operations.

(b) When this policy is issued to the
owner or general lessee of a build-
ing, building means the entire build-
ing. Such building is vacant unless at
least 31% of its total square footage
is:

(i) Rented to a lessee or sub-lessee
and used by the lessee or sub-
lessee to conduct its customary
operations; and/or

(ii) Used by the building owner to
conduct customary operations.

    © ISO Properties, Inc., 2001    CP 00 10 04 02    □

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

When:

| | | | |
|---|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 100,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

When:

| | | | |
|---|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 200,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When:

| | | | |
|---|---|---|---|
| The value of property is: | | |
| Bldg. at Location No. 1 | $ | 75,000 |
| Bldg. at Location No. 2 | $ | 100,000 |
| Personal Property at Location No. 2 | $ | 75,000 |
| | $ | 250,000 |
| The Coinsurance percentage for it is | | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| The Deductible is | $ | 1,000 |
| The amount of loss is: | | |
| Bldg. at Location No. 2 | $ | 30,000 |
| Personal Property at Location No. 2. | $ | 20,000 |
| | $ | 50,000 |

Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000

Step (4): $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

© ISO Properties, Inc., 2001    CP 00 10 04 02    □

(3) Has notified us of any change in owner-ship, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgage-holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the fol-lowing Optional Coverages apply separately to each item.

### 1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that prop-erty than the proportion that the Limit of In-surance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Cov-erage shown in the Declarations is not ex-tended, the Additional Condition, Coinsur-ance, is reinstated and this Optional Cover-age expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applied will auto-matically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | | | |
|---|---|---|---|
| | The applicable Limit of Insurance is | $ | 100,000 |
| | The annual percentage increase is | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

### 3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Cov-erage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock," unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

(3) If the conditions in d.(1) and d.(2) above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© ISO Properties, Inc., 2001

COMMERCIAL PROPERTY
CP 10 30 04 02

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** – Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.**, Exclusions; or

**2.** Limited in Section **C.**, Limitations;

that follow.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been damaged; or

**(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in Paragraph **B.4.a.(1)** applies to these coverages.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

h. **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or

2. To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d.(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

© ISO Properties, Inc., 2001

CP 10 30 04 02     ☐

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance;

   of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

   (1) Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building. Failure includes lack of sufficient capacity and reduction in supply.

   But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

   (2) Any loss caused by or resulting from:

     (a) Damage or destruction of "finished stock"; or

     (b) The time required to reproduce "finished stock".

   This exclusion does not apply to Extra Expense.

   (3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

   (4) Any increase of loss caused by or resulting from:

     (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

     (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

     (5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

     (6) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

   (1) Paragraph **B.1.a.** Ordinance Or Law, does not apply to insurance under this Coverage Form.

   (2) We will not pay for any loss caused by:

     (a) Your cancelling the lease;

     (b) The suspension, lapse or cancellation of any license; or

     (c) Any other consequential loss.

**c. Legal Liability Coverage Form**

   (1) The following exclusions do not apply to insurance under this Coverage Form:

     (a) Paragraph **B.1.a.**, Ordinance Or Law;

     (b) Paragraph **B.1.c.**, Governmental Action;

     (c) Paragraph **B.1.d.**, Nuclear Hazard;

     (d) Paragraph **B.1.e.**, Utility Services; and

     (e) Paragraph **B.1.f.**, War And Military Action.

© ISO Properties, Inc., 2001

CP 10 30 04 02     □

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

(1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

(2) Business Income coverage or Extra Expense coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

a. Animals, and then only if they are killed or their destruction is made necessary.

b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

(1) Glass; or

(2) Containers of property held for sale.

c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

(1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

a. $2,500 for furs, fur garments and garments trimmed with fur.

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $2,500 for patterns, dies, molds and forms.

d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

**D. Additional Coverage – Collapse**

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.

1. With respect to buildings:

a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

d. Weight of people or personal property;

e. Weight of rain that collects on a roof;

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.e., we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in 2.a., 2.d. and 2.e.

3. With respect to the following property:

a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in 2.b. through 2.f., we will pay for loss or damage to that property only if:

a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

b. The property is Covered Property under this Coverage Form.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse was caused by a Cause of Loss listed in 2.a. through 2.f. above;

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in 3. above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph 4. does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria

1. The coverage described in E.2. and E.6. only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under E.2. of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph F.2. (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage – Collapse.

6. The following, 6.a. or 6.b., applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage form.

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

F. Additional Coverage Extensions

1. Property In Transit

   This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. Water Damage, Other Liquids, Powder Or Molten Material Damage

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. Glass

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    © ISO Properties, Inc., 2001    CP 10 30 04 02    □

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.,** does not increase the Limit of Insurance.

## G. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into manmade underground cavities.

   **b.** Falling objects does not include loss or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

CP 00 90 07 88    ☐

## SENECA INSURANCE COMPANY, INC.

### MINIMUM EARNED PREMIUM

It is hereby understood and agreed that this policy is written subject to a minimum earned premium shown on the policy declarations page regardless of time in force.

ESP 011 (04/97)

# SENECA INSURANCE COMPANY, INC.

### POLLUTION, CONTAMINATION, DEBRIS REMOVAL

### EXCLUSION ENDORSEMENT
### (Absolute)

THIS ENDORSEMENT CHANGES THE COVERAGE AND CONDITIONS OF YOUR POLICY.  PLEASE READ IT CAREFULLY.

The following provisions are hereby made applicable to this policy:

I.    **DEFINITIONS**

"POLLUTANTS" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned, or unsalned.

"CONTAMINATION" means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of pollutants, whether permanent or transient, in any environment.

"ENVIRONMENT" includes any person, any real or personal property, animals, crops, and vegetation, land including land under which the building is placed, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed, or cultivated, including, but not limited to, any of the above owned, controlled or occupied by an insured.

II.    **POLLUTANTS AND CONTAMINATION EXCLUSION**

This insurance does not cover:

Loss or damage caused by the release, discharge, or dispersal of pollutants or contaminants (as defined in Item I above) into the environment anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous, unless the release, discharge, or dispersal is itself caused by any of the following "specified causes of loss": fire, lightning, aircraft, explosion, riot, civil commotion, smoke, vehicles, windstorm or hail to property contained in any building, vandalism, malicious mischief or leakage or accidental discharge from automatic fire protection systems.  The term "Loss or Damage" is understood to also include any claim arising from loss of use.  If loss or damage by the above "specified causes of loss" results, then the Insurer shall be liable for the resulting loss or damage caused by the "specified cause of loss".

III.    **ASBESTOS EXCLUSION**
This Insurance does not cover:

A.    Asbestos, dioxin, or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems.

B.    Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials.

ESP 021 (04/97)                                                                                    Page 1 of 2

C.      Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The coverage afforded does not apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

IV.      **DEBRIS REMOVAL EXCLUSION**

Notwithstanding any other exclusion listed in this policy, this insurance does not cover loss or damage or expenses incurred, either directly or indirectly, resulting from removal of debris of damaged property insured hereunder nor does this insurance cover any expenses involved to:

A.      Extract contaminants or pollutants, as defined in item I, from the debris; or
B.      Extract contaminants or pollutants, as defined in item I, from the land or water; or
C.      Remove, restore, or replace contaminated or polluted land or water; or
D.      Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.

SENECA INSURANCE COMPANY, INC.

THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ CAREFULLY

## TOTAL "MOLD" EXCLUSION

Notwithstanding any provision to the contrary within this policy:

1) We will not pay for loss, damage, cost, or expense caused directly or indirectly by, arising out of, resulting from, contributed by, or related in any way to "mold". Loss, damage, cost, or expense caused directly or indirectly by, arising out of, resulting from, contributed to by, or related in any way to "mold" is excluded regardless of any other cause or event that contributes concurrently, or in any sequence, or in any sequence with, the loss, damage, cost or expense; and

2) We will not defend any claim or suit, or pay any damages, loss, expense, cost, or obligation caused directly or indirectly by, arising out of, resulting from, contributed to by, or related in any way to any "mold".

This exclusion also applies to any damages, loss, cost or expense arising out of or associated, in any way, with any:

a) request, demand, or order that any insured or others abate, mitigate, test for, monitor, remediate, clean up, remove, contain, treat, detoxify, kill, destroy, dispose of, investigate or neutralize, or in any way respond to or assess the presence or effects of "mold", or

b) claim or suit on behalf of any person, entity, or organization, including any governmental authority, for damages because of abating, mitigating, testing for, monitoring, remediating, cleaning up, removing, containing, treating, detoxifying, killing, destroying, disposing of, investigating, or neutralizing, or in any way responding to, or assessing, the effects of "mold"; or

c) any obligation to share with, repay, or indemnify any person, organization or entity, related in any way to items a) and b) above.

The following definition is added to the policy:

"Mold" means any species of fungi, including, but not limited to, mold, yeast, mildew, spores, mold toxins, mycotoxins, mold metabolites, mold antigens, mold allergens, mold-produced antibiotics, or dust or fumes containing any foregoing, individually, or in any combination therewith or with another substance.

IL 09 71 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM; COVERAGE FOR CERTAIN FIRE LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following definitions are added with respect to the provisions of this endorsement:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

**B.** The following exclusion is added:

**EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:**

1. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

2. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

3. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

IL 09 71 11 02                © ISO Properties, Inc., 2002                Page 1 of 2    □

With respect to this Item **B.3.**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an "other act of terrorism", there is no coverage under this Coverage Part or Standard Property Policy.

## C. Exception Covering Certain Fire Losses

If a "certified act of terrorism" or an "other act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

With respect to fire resulting from any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

## D. Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Standard Property Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

 © ISO Properties, Inc., 2002    IL 09 71 11 02

COMMERCIAL PROPERTY
CP 00 30 04 02

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **G. – Definitions.**

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** Business Income including "Rental Value".

**b.** Business Income other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term Business Income will include "Rental Value". If option **c.** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**a.** The portion of the building which you rent, lease or occupy; and

**b.** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

### 2. Extra Expense

**a.** Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

© ISO Properties, Inc., 2001

3. **Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Limitation – Interruption Of Computer Operations**

a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

c. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

5. **Additional Coverages**

a. **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

(1) 3 consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

b. **Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

c. **Extended Business Income**

(1) Business Income Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

(2) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

(3) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations includes Collapse as set forth in that form.

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Interruption Of Computer Operations.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $2,500 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage – Interruption in Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

 © ISO Properties, Inc., 2001

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

© ISO Properties, Inc., 2001

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

    **a.** We have reached agreement with you on the amount of loss; or

    **b.** An appraisal award has been made.

**D. Additional Condition**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

    **a.** The Coinsurance percentage shown for Business Income in the Declarations; times

    **b.** The sum of:

        **(1)** The Net Income (Net Profit or Loss before income taxes), and

        **(2)** Operating expenses, including payroll expenses,

        that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described premises by the figure determined in Step **1.**; and

**3.** Multiply the total amount of loss by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight – outgoing;

**2.** Returns and allowances;

**3.** Discounts;

**4.** Bad debts;

**5.** Collection expenses;

**6.** Cost of raw stock and factory supplies consumed (including transportation charges);

**7.** Cost of merchandise sold (including transportation charges);

**8.** Cost of other supplies consumed (including transportation charges);

**9.** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**11.** All ordinary payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**12.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $ | 400,000 |
|---|---|---|---|
| | The Coinsurance percentage is | | 50% |
| | The Limit of Insurance is | $ | 150,000 |
| | The amount of loss is | $ | 80,000 |
| Step 1: | $400,000 x 50% = $200,000 | | |
| | (the minimum amount of insurance to meet your Coinsurance requirements) | | |
| Step 2: | $150,000 ÷ $200,000 = .75 | | |
| Step 3: | $80,000 x .75 = $60,000 | | |

We will pay no more than $60,000. The remaining $20,000 is not covered.

© ISO Properties, Inc., 2001
CP 00 30 04 02    □

**Example No. 2 (Adequate Insurance):**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been ... $ 400,000
The Coinsurance percentage is ... 50%
The Limit of Insurance is ... $ 200,000
The amount of loss is ... $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1.  **Maximum Period Of Indemnity**
    a.  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.
    b.  The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:
        (1)  The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or
        (2)  The Limit of Insurance shown in the Declarations.

2.  **Monthly Limit Of Indemnity**
    a.  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.
    b.  The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:
        (1)  The Limit of Insurance, multiplied by
        (2)  The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When:   The Limit of Insurance is ... $ 120,000
The fraction shown in the Declarations for this Optional Coverage is ... 1/4
The most we will pay for loss in each period of 30 consecutive days is:
$120,000 x 1/4 = $30,000
If, in this example, the actual amount of loss is:
Days 1-30 ... $ 40,000
Days 31-60 ... 20,000
Days 61-90 ... 30,000
... $ 90,000

We will pay:
Days 1-30 ... $ 30,000
Days 31-60 ... 20,000
Days 61-90 ... 30,000
... $ 80,000

The remaining $10,000 is not covered.

3.  **Business Income Agreed Value**
    a.  To activate this Optional Coverage:
        (1)  A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":
            (a)  During the 12 months prior to the date of the Work Sheet; and
            (b)  Estimated for the 12 months immediately following the inception of this Optional Coverage.
        (2)  The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:
            (a)  The Coinsurance percentage shown in the Declarations; multiplied by
            (b)  The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.
    b.  The Additional Condition, Coinsurance, is suspended until:
        (1)  12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example:**

| When: | The Limit of Insurance is | $ | 100,000 |
|---|---|---|---|
| | The Agreed Value is | $ | 200,000 |
| | The amount of loss is | $ | 80,000 |
| Step (a): | $100,000 ÷ $200,000 = .50 | | |
| Step (b): | .50 x $80,000 = $40,000 | | |

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period Of Indemnity**

Under Paragraph **A.5.c.**, Extended Business Income, the number "30" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

1. "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. "Period of Restoration" means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage for Business Income coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

b. Continuing normal operating expenses incurred in connection with that premises, including:

(1) Payroll; and

(2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

    © ISO Properties, Inc., 2001    CP 00 30 04 02    ☐

6. "Suspension" means:

    **a.** The slowdown or cessation of your business activities; or

    **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

© ISO Properties, Inc., 2001



**RBN & ASSOCIATES**
Insurance Brokers

233 North Michigan Ave.
Suite 1780
Chicago, Illinois 60601
Phone 312•856•9400
Fax 312•856•9425

February 13, 2004

Ms. Rosanne Morinec
L. Carlton Mertz Co.
6147 W. 65th Street
Chicago, IL  60638-5303

RE:  Boiler & Machinery Policy
     No. FBP 2293667

Dear Ms. Morinec:

Hartford Steam Boiler Inspection  &  Insurance  Company  has  issued  your  Boiler & Machinery  policy effective October 1, 2003 through October 1, 2004.

Boiler and Machinery coverage is  provided on  a comprehensive form including production machinery, which provides Breakdown coverage for the pressurized, mechanical and electrical equipment needed to sustain your business.  Property Perils including Lightning, Freeze, Business Income, Extra Expense, Service Interruption, and Contingent Business Income are excluded from this coverage.

## BREAKDOWN OF LIMITS:

| | |
|---|---|
| Equipment Breakdown Limit: | $1,100,000 |
| Property Damage: | $1,000,000 |
| Off Premises Property Damage | $   25,000 |
| Perishable Goods | $   25,000 |
| Data Restoration | $   25,000 |
| Demolition | $  100,000 |
| Ordinance or Law | $   25,000 |
| Expediting Expenses | $   25,000 |
| Hazardous Substances | $   25,000 |
| Newly Acquired Locations | $  100,000 |

## DEDUCTIBLES:

| | |
|---|---|
| Direct Coverages: | $   1,500 |
| Except A/C and Refrigerating Equipment: | $25.00 Per Horsepower,  $1,500 Minimum |

 If you should have any questions after your review of the enclosed material, please do not hesitate to contact our office.

Sincerely,

*Debra P. Owles*

Enclosures

# **HS**B Freestyle

Your equipment breakdown policy.



# Engineering services with insurance

Thank you for choosing Hartford Steam Boiler for your Equipment Breakdown insurance. The following additional services are part of our insurance program.

**Jurisdictional inspections:** a built-in benefit. Most states and municipalities require periodic inspections for boilers and pressure vessels. If you have equipment that requires an inspection, Hartford Steam Boiler's professionals can perform it for you as part of this insurance program.

**Hot-line to inspection service.** To schedule an inspection, call our Inspection Hot-line at 1-800-333-4677 between 8:00 a.m. to 9:00 p.m. EST, Monday to Friday. Have your Equipment Breakdown policy number available when you call.

**Confused about inspections?** You're not alone. Many people find jurisdictional inspection codes and requirements confusing. For information about the requirements in your area call the HSB Inspection Hot-line at 1-800-333-4677.

**Loss prevention information.** Our Inspection Hot-line staff and field inspectors can answer technical questions to help you maintain equipment. Proper maintenance can help you prevent failures and bring other benefits such as greater energy efficiency and reliability.

**Technical information by fax.** Hartford Steam Boiler's Fax-On-Demand service is an automated electronic library of ready-to-order documents. These cover: equipment maintenance tips, loss prevention measures, inspection requirements, and more. Just call 1-800-716-7874 from a touch tone phone and follow the prompts.

# Our business is to get you back in business

We're committed to making the claims process as fast and painless as possible. Here's how we can help:

**Notify us of a claim as soon as possible.** This will further expedite the process. If you need to make immediate repairs, please make an effort to save the damaged parts.

**We offer a repair firm referral service.** Our claims adjusters have access to a global network of repair vendors and parts suppliers. We can help you find firms that deliver prompt service and fair prices - and who stand behind their quality work.

**For a business income claim,** provide indications of activity both before and after the loss. Also, keep records of extra expenses during the interruption period. We want to get you back in business quickly; this information will help.

**Call or fax us 24 hours a day.** Report equipment accidents by phone or fax and one of our claim adjusters will contact you as soon as possible.

Claim Phone      1-888-472-5677 (HSB-LOSS)

Claim Fax        1-888-329-5677 (FAX-LOSS)

# Policy service requests and changes

Policy services such as endorsements, changes, premium finance correspondence and inquiries should be directed to our policy service unit:

The Hartford Steam Boiler Inspection and Insurance Company
Policy Service Unit
Bay Colony Executive Park
595 East Swedesford Rd.
Wayne, PA 19087

Policy service phone:    1-800-345-1122
Policy service fax:      1-800-298-4083



# HSB FREESTYLE
## Common Policy Declarations

Presented by:          Rbn & Associates Ins Brokers
                       (312)856-9400



**The Hartford Steam Boiler Inspection and Insurance Company**

To report a claim - Call 1-888-HSB-LOSS (472-5677);  Fax 1-888-329-5677.

Policy Number..........FBP2293667

Issue Date .......... 10/28/2003

Named Insured:
**VJ Compounding Corp**

MailingAddress.........6147 W 65th St
                       CHICAGO, IL 60638

Policy Period.............10/01/2003 to 10/01/2004 at 12:01 A.M.
                       Standard Time at the above Mailing Address

Annual Premium........$447.00
Premium Due Now....$447.00

This policy is made up of these Declarations and the following forms:

| Description | Company Form No. | | |
|---|---|---|---|
| Agreement and Conditions | | 6670 | 10/2002 |
| Equipment Breakdown Coverage Form | | 6671 | 10/2002 |
| Equipment Breakdown Declarations | DFB | EBCDEC | 10/2002 |
| Schedule of Locations | EFB | SCHLOCS | 01/1998 |
| Terrorism Risk Insurance Act | END | EBTRIA | 02/2003 |
| Illinois Changes | EST | IL | 10/2002 |
| Illinois Changes | FBP | IL | 10/2002 |

DFB COMDEC 10/2002

# Equipment Breakdown Coverage Part Declarations No. 1

Named Insured:

VJ Compounding Corp

Policy Number........  FBP2293667

Effective Date.........  10/01/2003
Issue Date...............  10/28/2003

These coverages apply to any location listed on the Schedule of Locations for Equipment Breakdown
Coverage Part Declarations No. 1

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $1,100,000 |
| Property Damage | $1,000,000 |
| Off Premises Property Damage | $25,000 |
| Business Income | Excluded |
| Extra Expense | Excluded |
| Service Interruption | Excluded |
| Contingent Business Income | Excluded |
| Perishable Goods | $25,000 |
| Data Restoration | $25,000 |
| Demolition | $100,000 |
| Ordinance or Law | $25,000 |
| Expediting Expense | $25,000 |
| Hazardous Substances | $25,000 |
| Newly Acquired Locations | $100,000 |

## Deductibles

Direct.............................................................  $1,500.00
      Except A/C and Refrigerating Equipment $25.00 per HP, Minimum of $1,500.00

## Other Conditions

Newly Acquired Locations              90 Days

# Schedule of Locations

Named Insured:

VJ Compounding Corp

Policy Number........   FBP2293667

Effective Date.........   10/01/2003
Issue Date...............   10/28/2003

| Location Number | Coverage Part Declarations Number | Location Address |
|---|---|---|
| 1 | 1 | VJ Compounding Corp<br>6147 W 65th St<br>CHICAGO, IL 60638 |

# Terrorism Risk Insurance Act of 2002

Named Insured:

VJ Compounding Corp

Policy Number........  FBP2293667

Effective Date.........  10/01/2003
Issue Date...............  10/28/2003

This endorsement changes the policy.  Please read it carefully.

**Applicable Premium**

Your policy premium includes the following premium charge for losses resulting from certified acts of terrorism as defined in the Terrorism Risk Insurance Act of 2002: **$0**.

**Informational Notice**

The following notice does not change your coverage under this policy, but is provided for your information in compliance with the Terrorism Risk Insurance Act of 2002.

Under the Terrorism Risk Insurance Act of 2002, we must offer you coverage for losses arising from certified acts of terrorism as defined in the Act. This policy does not contain a terrorism exclusion. The actual coverage provided by the policy for acts of terrorism, as is true for all coverages, is subject to the terms, conditions, exclusions, limits, and other provisions of your policy, any endorsements to your policy, and generally applicable rules of law.

Any coverage provided by this policy for losses arising from certified acts of terrorism is partially reinsured by the United States of America under a formula established by federal law. Under this formula, the United States will pay 90 percent of covered terrorism losses exceeding a statutorily established deductible paid by insurers until such time as insured losses under the program reach $100 billion. If that occurs, Congress will determine the procedures for, and the source of, any payments for losses in excess of $100 billion.

# Agreement and Conditions



**The Hartford Steam Boiler Inspection and Insurance Company:**
**One State Street, Hartford, Connecticut  06102**

## Insuring Agreement

In return for payment of the premium and subject to all terms of the policy,
we agree with you to provide the insurance as stated in this policy.

In Witness Whereof, the Company identified on the Declarations has caused this policy
to be signed by its President and Corporate Secretary at Hartford, Connecticut.

_Richard H. Booth_

Richard H. Booth, President and Chief Executive Officer

_Robert C. Walker_

Robert C. Walker, Corporate Secretary

Includes copyrighted material of Insurance Services Office, Inc., with its permission

# General Conditions

## I. COMMON POLICY CONDITIONS

### A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## II. CALCULATION OF PREMIUM

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or

anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

## III. REPORT OF VALUES

You must report insurable values to us at least once a year.

## IV. ADJUSTMENT OF PREMIUM

A. The premium charged at the inception of each policy year is an advance premium. When we receive updated insurable values from you or when we determine updated insurable values through an audit or claim adjustment, we will determine an adjusted premium for this insurance.

B. If the adjusted premium is less than the advance premium, we will return the excess premium to you. Such excess premium will not exceed 75% of the advance premium.

C. If the adjusted premium is greater than the advance premium, we will charge the additional premium based on your reports of value.

## V. JOINT OR DISPUTED LOSS AGREEMENT

A. This condition is intended to facilitate payment of insurance proceeds when:

1. Both a commercial property policy and this equipment breakdown policy are in effect,

2. Damage occurs to Covered Property that is insured by the commercial property policy and this equipment breakdown policy; and

3. There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

B. The provisions of this condition apply only if all of the following requirements are met:

1. The commercial property policy carried by the Named Insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this condition;

2. There is a Joint Loss or Disputed Loss as defined below; and

3. The total amount of the loss is agreed to by you, the commercial property insurer(s) and us.

C. Joint Loss and Disputed Loss are defined as follows:

1. Joint Loss means that there is damage to property that is Covered Property under both the commercial property policy and this policy and both the commercial property insurer(s) and we admit to some liability for payment under the respective policies.

2. Disputed Loss means that there is damage to property that is Covered Property under both the commercial property policy and this policy and the commercial property insurer(s) and we agree that there is some liability under one policy or the other, but disagree about which policy is liable for the loss.

D. If the requirements listed in paragraph B. above are satisfied, we and the commercial property insurer(s) will make payments to the extent, and in the manner, described as follows:

1. We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this equipment breakdown policy and one-half (1/2) the amount of the loss that is in disagreement.

2. The commercial property insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

3. Payments by the insurers of the amounts that are in disagreement, as described in paragraphs 1. and 2., do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

4. The amount in disagreement to be paid by us under this condition shall not exceed the amount payable under the equivalent loss agreement(s) of the commercial property policy.

5. The amount to be paid under this condition shall not exceed the amount we would have paid had no commercial property policy been in effect at the time of loss. In no event will we pay more than the applicable Equipment Breakdown Limit shown in the Declarations.

6. Acceptance by you of sums paid under this condition does not alter, waive or surrender any other rights against us.

E.  Arbitration

    1.  The commercial property insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this condition.

    2.  You agree to cooperate with any arbitration procedures.

    3.  There will be three arbitrators: one will be appointed by us, and another will be appointed by the commercial property insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

F.  Final Settlement Between Insurers

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay liquidated damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated damages are defined as interest from the date the insured invokes this agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the money rates column of the Wall Street Journal during the period of the liquidated damages. Arbitration expenses are not a part of the excess contribution for which liquidated damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

# Equipment Breakdown Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section G - DEFINITIONS. Examples are shown for illustrative purposes only and do not represent predicted or expected outcomes.

## A. COVERAGE

This Equipment Breakdown Coverage provides insurance for a Covered Cause of Loss as defined in A.1. below. In the event of a Covered Cause of Loss, we will pay for loss as described in A.2. below.

1. **Covered Cause of Loss – "Accident"**

   The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident." Without an "accident," there is no Equipment Breakdown Coverage.

   a. **"Accident"** means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

      (1) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

      (2) Artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

      (3) Explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

      (4) An event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

      (5) An event inside hot water boilers or other water heating equipment that damages such equipment; or

      (6) Bursting, cracking or splitting.

      "Accident" does not include any condition or event listed in Definition G.1.b.

   b. **"Covered Equipment"** means the following:

      (1) Unless specified otherwise in the Declarations:

         (a) Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

         (b) Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

      (2) Except as specifically provided for under Off Premises Property Damage, Service Interruption, Contingent Business Income and paragraph (2) of Perishable Goods, such equipment must be at a location described in the Declarations and must be owned or leased by you or operated under your control.

      "Covered equipment" does not include any property listed in Definition G.8.b.

2. **Coverages Provided**

   This section lists the coverages that may apply in the event of an "accident." Each coverage is subject to a specific limit as shown in the Declarations. See paragraph C.2. for details.

   These coverages apply only to the direct result of an "accident." For each coverage, we will pay only for that portion of the loss, damage or expense that is solely attributable to the "accident."

   a. **Property Damage**

      We will pay for physical damage to "covered property" that is at a location indicated in the Declarations at the time of the "accident."

   b. **Off Premises Property Damage**

      If you have transportable "covered equipment" that, at the time of the "accident," is within the Coverage Territory, but is not:

      (1) At a location indicated in the

Includes copyright material of Insurance Services Office, Inc. with its permission.

Declarations; or

   (2) At any other location owned or leased by you,

we will pay for physical damage to such "covered equipment."

**c.  Business Income**

   (1) We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

   (2) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

   (3) We will consider the actual experience of your business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment.

**d.  Extra Expense**

We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

**e.  Service Interruption**

We will pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of an "interruption of service."

**f.  Contingent Business Income**

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that results from an "interruption of supply."

**g.  Perishable Goods**

   (1) We will pay for physical damage to "perishable goods" due to "spoilage."

   (2) We will also pay for physical damage to "perishable goods" due to "spoilage" that is the result of an "interruption of service."

   (3) We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited

to ammonia.

   (4) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**h.  Data Restoration**

   (1) We will pay for your reasonable and necessary cost to research, replace or restore lost "data."

   (2) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of h.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Data Restoration limit.

**i.  Demolition**

   (1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

     (a) Requires the demolition of a building that is otherwise reparable;

     (b) Is in force at the time of the "accident"; and

     (c) Is not addressed under Hazardous Substances coverage.

   (2) We will pay for the following additional costs to comply with such ordinance or law:

     (a) Your actual and necessary cost to demolish and clear the site of the undamaged parts of the building; and

     (b) Your actual and necessary cost to reconstruct the undamaged parts of the building.

   (3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

   (4) We will also pay for your loss and

Includes copyright material of Insurance Services Office, Inc. with its permission.

6671  10/2002

2 of 17

expense as defined under Business Income coverage and Extra Expense coverage that is the result of i.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Demolition limit.

**j.   Ordinance or Law**

(1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

    (a) Regulates the construction or repair of buildings, including "building utilities";

    (b) Is in force at the time of the "accident"; and

    (c) Is not addressed under Demolition coverage or Hazardous Substances coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

    (a) Your actual and necessary cost to repair the damaged portions of the building;

    (b) Your actual and necessary cost to reconstruct the damaged portions of the building; and

    (c) Your actual and necessary cost to bring undamaged portions of the building into compliance with the ordinance or law.

(3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

(4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of j.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Ordinance or Law limit.

**k.   Expediting Expenses**

With respect to your damaged "covered property," we will pay the reasonable extra cost to:

(1) Make temporary repairs; and

(2) Expedite permanent repairs or permanent replacement.

**l.   Hazardous Substances**

(1) We will pay for the additional cost to repair or replace "covered property" because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Perishable Goods, A.2.g.(3).

(2) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

(3) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of l.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Hazardous Substances limit.

**m.   Newly Acquired Locations**

(1) You will notify us promptly of any newly acquired location that you have purchased or leased during the Policy Period.

(2) All coverages applicable to any scheduled location under this Equipment Breakdown Coverage are extended to a newly acquired location that you have purchased or leased during the Policy Period.

(3) This coverage begins at the time you acquire the property. As respects newly constructed properties, we will only consider them to be acquired by you when you have fully accepted the completed project.

(4) This coverage ends when any of the following first occurs:

    (a) This Policy expires;

    (b) The number of days specified in the Declarations for this coverage expires after you acquire the location;

(c) The location is incorporated into the regular coverage of this policy; or

(d) The location is incorporated into the regular coverage of another Equipment Breakdown policy you have.

(5) If limits or deductibles vary by location, the highest limits and deductibles will apply to newly acquired locations. However, the most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Newly Acquired Locations limit in the Declarations.

(6) We will charge you additional premium for newly acquired locations from the date you acquire the property.

**n.  Course of Construction**

This coverage is automatically included and does not need to be indicated in the Declarations.

(1) You will notify us promptly of any expansion or rehabilitation of any location described in the Declarations.

(2) All coverages applicable to any location described in the Declarations are extended to an expansion or rehabilitation of that location.

(3) This coverage begins at the time you begin the expansion or rehabilitation project.

(4) We will charge you additional premium for newly acquired equipment from the date the equipment is installed.

**B.  EXCLUSIONS**

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

1.  We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident."

**a.  Fire and Explosion**

(1) Fire, including smoke from a fire.

(2) Combustion explosion. This includes, but is not limited to, a combustion

explosion of any steam boiler or other fired vessel.

(3) Any other explosion, except as specifically provided in A.1.a.(3).

**b.  Ordinance or Law**

The enforcement of, or change in, any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as specifically provided in A.2.i., j. and l. (Demolition, Ordinance or Law and Hazardous Substances coverages).

**c.  Earth Movement**

Earth movement, whether natural or human-made, including but not limited to earthquake, shock, tremor, subsidence, landslide, rock fall, earth sinking, sinkhole collapse or tsunami.

**d.  Nuclear Hazard**

Nuclear reaction, detonation or radiation, or radioactive contamination, however caused.

**e.  War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

**f.  Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow; or

(3) Water that backs up or overflows from a sewer, drain or sump.

However, if electrical "covered equipment" requires drying out because of the above, we will pay for the amount you actually expend to dry out such equipment, subject to the applicable Property Damage limit and Direct Coverage deductible. We will not pay more than the Actual Cash Value of the affected electrical "covered equipment."

Includes copyright material of Insurance Services Office, Inc. with its permission.

We will not pay to replace such equipment or for any other loss, damage or expense.

g. **Failure to Protect Property**

Your failure to use all reasonable means to protect "covered property" from damage following an "accident."

h. **Fines**

Fine, penalty or punitive damage.

i. **Mold**

Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast, spores or toxins. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage.

j. **Deliberate Acts**

The deliberate act of any person to cause damage or harm, including but not limited to vandalism, malicious mischief or sabotage.

2. We will not pay for an "accident" caused by or resulting from any of the following causes of loss:

a. Lightning.

b. Windstorm or Hail. However, this exclusion does not apply when:

(1) "Covered equipment" located within a building or structure suffers an "accident" that results from wind-blown rain, snow, sand or dust; and

(2) The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

c. Collision or any physical contact caused by a "vehicle." This includes damage by objects falling from aircraft. However, this exclusion does not apply to any unlicensed "vehicles" which you own or which are operated in the course of your business.

d. Riot or Civil Commotion.

e. Leakage or discharge of any substance from an automatic sprinkler system, including collapse of a tank that is part of the system.

f. Volcanic Action.

g. An electrical insulation breakdown test.

h. A hydrostatic, pneumatic or gas pressure test.

i. Water or other means intended to extinguish a fire, even when such an attempt is unsuccessful.

j. Elevator collision.

3. We will not pay for an "accident" caused by or resulting from any of the following perils, if such peril is a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

a. Falling Objects.

b. Weight of Snow, Ice or Sleet.

c. Water Damage, meaning discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam.

d. Collapse.

e. Breakage of Glass.

f. Freezing caused by cold weather.

g. Discharge of molten material from equipment, including the heat from such discharged material.

4. Exclusions 2. and 3. do not apply if all of the following are true:

a. The excluded peril occurs away from any location described in the Declarations and causes an electrical surge or other electrical disturbance;

b. Such surge or disturbance is transmitted through utility service transmission lines to a described location;

c. At the described location, the surge or disturbance results in an "accident" to "covered equipment" that is owned or operated under the control of you or your landlord; and

d. The loss, damage or expense caused by such surge or disturbance is not a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

5. With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

Includes copyright material of Insurance Services Office, Inc. with its permission.

a. Loss associated with business that would not or could not have been carried on if the "accident" had not occurred;

b. Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business;

c. That part of any loss that extends beyond or occurs after the "period of restoration." This includes, but is not limited to:

   (1) "Business income" that would have been earned after the "period of restoration," even if such loss is the direct result of the suspension, lapse or cancellation of a contract during the "period of restoration"; and

   (2) "Extra expense" to operate your business after the "period of restoration," even if such loss is contracted for and paid during the "period of restoration."

d. Any increase in loss resulting from an agreement between you and your customer or supplier. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges and liquidated damages.

6. With respect to Off Premises Property Damage coverage, Service Interruption coverage, Contingent Business Income coverage and paragraph (2) of Perishable Goods coverage, we will also not pay for an "accident" caused by or resulting from any of the perils listed in Exclusion 3. above, whether or not such peril is a covered cause of loss under another coverage part or policy of insurance you have.

7. With respect to Data Restoration coverage, we will also not pay to reproduce:

   a. Software programs or operating systems that are not commercially available; or

   b. "Data" that is obsolete, unnecessary or useless to you.

8. With respect to Demolition and Ordinance or Law coverages, we will also not pay for:

   a. Increased demolition or reconstruction costs until they are actually incurred; or

   b. Loss due to any ordinance or law that:

      (1) You were required to comply with before the loss, even if the building was undamaged; and

      (2) You failed to comply with;

      whether or not you were aware of such non-compliance.

## C. LIMITS OF INSURANCE

Any payment made under this Equipment Breakdown Coverage will not be increased if more than one insured is shown in the Declarations or if you are comprised of more than one legal entity.

1. **Equipment Breakdown Limit**

   The most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Equipment Breakdown Limit in the Declarations.

2. **Coverage Limits**

   a. The limit of your insurance under each of the coverages listed in A.2. from loss, damage or expense arising from any "one accident" is the amount indicated for that coverage in the Declarations. These limits are a part of, and not in addition to, the Equipment Breakdown Limit. If an amount of time is shown, coverage will continue for no more than that amount of time immediately following the "accident." If a coverage is shown as "Included," that coverage is provided up to the remaining amount of the Equipment Breakdown Limit. If no limit is shown in the Declarations for a coverage, or if a coverage is shown as Excluded in the Declarations, that coverage will be considered to have a limit of $0.

   b. If two or more coverage limits apply to the same loss or portion of a loss, we will pay only the smallest of the applicable limits for that loss or portion of the loss. This means that if:

      (1) You have a loss under one of the coverages listed in A.2.; and

      (2) All or part of the loss is not covered because the applicable coverage is Excluded or has a limit that is less than the amount of your loss,

      we will not pay the remaining amount of such loss under any other coverage.

**EXAMPLE 1**

Property Damage Limit: $7,000,000

Business Income Limit: $1,000,000

Newly Acquired Locations Limit: $500,000

There is an "accident" at a newly acquired location that results in a Property Damage loss of $200,000 and a Business Income loss of $800,000.

We will pay $500,000, because the entire loss is subject to the Newly Acquired Locations Limit of $500,000.

Includes copyright material of Insurance Services Office, Inc. with its permission.

**EXAMPLE 2**

Property Damage Limit: $7,000,000

Business Income Limit: $500,000

Hazardous Substances Limit: $25,000

There is an "accident" that results in a loss of $100,000. If no "hazardous substance" had been involved, the property damage loss would have been $10,000 and the business income loss would have been $20,000. The presence of the "hazardous substance" increased the loss by $70,000 (increasing the clean up and repair costs by $30,000 and increasing the business income loss by $40,000).

We will pay $55,000 ($10,000 property damage plus $20,000 business income plus $25,000 hazardous substances).

D. **DEDUCTIBLES**

 1. **Deductibles for Each Coverage**

    a. Unless the Declarations indicate that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

    b. We will not pay for loss, damage or expense under any coverage until the amount of the covered loss or damage exceeds the deductible amount indicated for that coverage in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit indicated in the Declarations.

    c. If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

    d. The following applies when a deductible is expressed as a function of the horsepower rating of a refrigerating or air conditioning system. If more than one compressor is used with a single system, the horsepower rating of the largest motor or compressor will determine the horsepower rating of the system.

 2. **Direct and Indirect Coverages**

    a. Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Declarations.

    b. Unless more specifically indicated in the Declarations:

       (1) Indirect Coverages Deductibles apply to Business Income and Extra Expense loss, regardless of where such coverage is provided in this

Equipment Breakdown Coverage; and

       (2) Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this Equipment Breakdown Coverage.

    **EXAMPLE**

    An "accident" results in covered losses as follows:

    $100,000  Total Loss (all applicable coverages)

    $ 35,000  Business Income Loss (including $2,000 of business income loss payable under Data Restoration coverage)

    $  5,000  Extra Expense Loss

    In this case, the Indirect coverages loss totals $40,000 before application of the Indirect Coverage Deductible. The Direct coverages loss totals the remaining $60,000 before application of the Direct Coverage Deductible.

 3. **Application of Deductibles**

    a. **Dollar Deductibles**

       We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations.

    b. **Time Deductibles**

       If a time deductible is shown in the Declarations, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

    c. **Multiple of Average Daily Value (ADV) Deductibles**

       If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

       The ADV (Average Daily Value) will be the "business income" that would have been earned during the period of interruption had no "accident" occurred, divided by the number of working days in that period. The ADV applies to the "business income" value of the entire location, whether or not the loss affects the entire location. If more than one location is

Includes copyright material of Insurance Services Office, Inc. with its permission.

included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Declarations will be multiplied by the ADV as determined above. The result will be used as the applicable deductible.

**EXAMPLE**

Business is interrupted, partially or completely, for 10 working days. If there had been no "accident," the total "business income" at the affected location for those 10 working days would have been $5,000. The Indirect Coverages Deductible is 3 Times ADV.

$5,000 / 10 = $500 ADV

3 X $500 = $1,500 Indirect Coverages Deductible

d. **Percentage of Loss Deductibles**

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated Minimum Deductible, the Minimum Deductible will be the applicable deductible.

E. **LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Brands and Labels**

If branded or labeled merchandise that is "covered property" is damaged by an "accident," but retains a salvage value, you may, at your expense:

a. Stamp the word SALVAGE on the merchandise or its containers if the stamp will not physically damage the merchandise; or

b. Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

We will pay for any reduction in value of the

salvage merchandise resulting from either of these two actions, subject to all applicable limits.

If a Brands and Labels Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

3. **Coinsurance - Business Income Coverage**

a. Unless otherwise shown in the Declarations, Business Income coverage is subject to coinsurance. This means that we will not pay the full amount of any "business income" loss if the "business income actual annual value" is greater than the "business income estimated annual value" at the affected location at the time of the "accident." Instead, we will determine the most we will pay using the following steps:

(1) Divide the "business income estimated annual value" by the "business income actual annual value" at the time of the "accident";

(2) Multiply the total amount of the covered loss of "business income" by the amount determined in paragraph (1) above;

(3) Subtract the applicable deductible from the amount determined in paragraph (2) above;

The resulting amount, or the Business Income Limit, whichever is less, is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

b. Coinsurance applies separately to each insured location.

c. If you report a single "business income estimated annual value" for more than one location, without providing information on how that amount should be distributed among the locations, we will distribute the amount evenly among all applicable locations.

**EXAMPLE 1 (Underinsurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $100,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

Includes copyright material of Insurance Services Office, Inc. with its permission.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $100,000 / $200,000 = .5

Step 2: $40,000 x.5 = $20,000

Step 3: $20,000 - $5,000 = $15,000

The total "business income" loss recovery, after deductible, would be $15,000. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

We will also charge you an additional premium in recognition of the actual "business income annual value."

**EXAMPLE 2 (Adequate insurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $200,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $200,000 / $200,000 = 1

Step 2: $40,000 x 1 = $40,000

Step 3: $40,000 - $5,000 = $35,000

The total "business income" loss recovery, after deductible, would be $35,000.

4. **Coinsurance – Coverages other than Business Income**

Coverages other than Business Income may be subject to coinsurance if so indicated in the Declarations. If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of the property subject to the coverage at the time of the "accident" times the Coinsurance percentage shown for it in the Declarations is greater than the applicable limit.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of the property subject to the coverage at the time of the "accident" by the Coinsurance percentage;

(2) Divide the applicable limit by the amount determined in step (1);

(3) Multiply the total amount of loss, before the application of any

deductible, by the amount determined in step (2); and

(4) Subtract the deductible from the amount determined in step (3).

We will pay the amount determined in step (4) or the applicable limit, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

b. Coinsurance applies separately to each insured location.

**EXAMPLE 1 (Underinsurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $200,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $200,000 x 80% = $160,000

Step 2: $100,000/$160,000 = .625

Step 3: $60,000 x .625 = $37,500

Step 4: $37,500 - $5,000 = $32,500

The total Perishable Goods loss recovery, after deductible, would be $32,500. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE 2 (Adequate insurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $100,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $100,000 x 80% = $80,000

Step 2: $100,000/$80,000 = 1.25

Coinsurance does not apply.

Step 3: $60,000 - $5,000 = $55,000

The total Perishable Goods loss recovery, after deductible, would be $55,000.

5. **Defense**

We have the right, but are not obligated, to defend you against suits arising from claims of owners of property in your care, custody or control. When we do this, it will be at our expense.

Includes copyright material of Insurance Services Office, Inc. with its permission.

6671  10/2002

6. **Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

a. Give us a prompt notice of the loss or damage, including a description of the property involved.

b. You must reduce your loss, damage or expense, if possible, by:

   (1) Protecting property from further damage. We will not pay for your failure to protect property, as stated in Exclusion B.1.g.;

   (2) Resuming business, partially or completely at the location of loss or at another location;

   (3) Making up lost business within a reasonable amount of time. This includes working extra time or overtime at the location of loss or at another location. The reasonable amount of time does not necessarily end when the operations are resumed;

   (4) Using merchandise or other property available to you;

   (5) Using the property or services of others; and

   (6) Salvaging the damaged property.

c. Allow us a reasonable time and opportunity to examine the property and premises before repair or replacement is undertaken or physical evidence of the "accident" is removed. But you must take whatever measures are necessary for protection from further damage.

d. Make no statement that will assume any obligation or admit any liability, for any loss, damage or expense for which we may be liable, without our consent.

e. Promptly send us any legal papers or notices received concerning the loss, damage or expense.

f. As often as may be reasonably required, permit us to inspect your property, premises and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

g. If requested, permit us to examine you and any of your agents, employees and representatives under oath. We may examine any insured under oath while not in the presence of any other insured. Such

examination:

   (1) May be at any time reasonably required;

   (2) May be about any matter relating to this insurance, your loss, damage or expense, or your claim, including, but not limited to, your books and records; and

   (3) May be recorded by us by any methods we choose.

h. Send us a signed, sworn proof of loss containing the information we request. You must do this within 60 days after our request.

i. Cooperate with us in the investigation and settlement of the claim.

7. **Errors and Omissions**

a. We will pay your loss covered by this Equipment Breakdown coverage if such loss is otherwise not payable solely because of any of the following:

   (1) Any error or unintentional omission in the description or location of property as insured under this policy;

   (2) Any failure through error to include any premises owned or occupied by you at the inception of this policy; or

   (3) Any error or unintentional omission by you that results in cancellation of any premises insured under this policy.

b. No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

c. It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

d. If an Errors and Omissions Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

8. **Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

a. Demonstrating that the loss, damage or expense is the result of an "accident" covered under this Equipment Breakdown

Includes copyright material of Insurance Services Office, Inc. with its permission.

Coverage; and

b. Calculating the dollar amount of the loss, damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible "accident" occurred at your premises or involved your equipment.

9. **Salvage and Recoveries**

When, in connection with any loss under this Equipment Breakdown Coverage, any salvage or recovery is received after the payment for such loss, the amount of the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

10. **Valuation**

We will determine the value of "covered property" as follows:

a. Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

(1) The cost to repair the damaged property;

(2) The cost to replace the damaged property on the same site; or

(3) The amount you actually spend that is necessary to repair or replace the damaged property.

b. The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c. Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

d. **Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that we agree is better for the environment, safer for people or more energy efficient than the equipment being replaced, subject to the following conditions:

(1) We will not pay more than 125% of

what the cost would have been to replace with like kind and quality;

(2) We will not pay to increase the size or capacity of the equipment;

(3) This provision only applies to Property Damage coverage;

(4) This provision does not increase any of the applicable limits;

(5) This provision does not apply to any property valued on an Actual Cash Value basis; and

(6) This provision does not apply to the replacement of component parts.

e. The following property will be valued on an Actual Cash Value basis:

(1) Any property that does not currently serve a useful or necessary function for you;

(2) Any "covered property" that you do not repair or replace within 24 months after the date of the "accident"; and

(3) Any "covered property" for which Actual Cash Value coverage is specified in the Declarations.

Actual Cash Value includes deductions for depreciation.

f. If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

(1) The property was manufactured by you;

(2) The sales price of the property is less than the replacement cost of the property; or

(3) You are unable to replace the property before its anticipated sale.

g. Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

(1) For mass-produced and commercially available software, at the replacement cost.

(2) For all other "data" and "media," at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

Includes copyright material of Insurance Services Office, Inc. with its permission.

h.  Air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances will be valued at the cost to do the least expensive of the following:

(1)  Repair or replace the damaged property and replace any lost CFC refrigerant;

(2)  Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3)  Replace the system with one using a non-CFC refrigerant.

In determining the least expensive option, we will include any associated Business Income or Extra Expense loss. If option (2) or (3) is more expensive than (1), but you wish to retrofit or replace anyway, we will consider this better for the environment and therefore eligible for valuation under paragraph d., Environmental, Safety and Efficiency Improvements. In such case, E.10.d.(1) is amended to read: "We will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality."

## F.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

1.  **Additional Insured**

If a person or organization is designated in this Equipment Breakdown Coverage as an additional insured, we will consider them to be an insured under this Equipment Breakdown Coverage only to the extent of their interest in the "covered property."

2.  **Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve you or us of any obligation under this Equipment Breakdown Coverage.

3.  **Concealment, Misrepresentation or Fraud**

We will not pay for any loss and coverage will be void if you or any additional insured at any time:

a.  Intentionally cause or allow loss, damage or expense in order to collect on insurance; or

b.  Intentionally conceal or misrepresent a material fact concerning:

(1)  This Equipment Breakdown

Coverage;

(2)  The "covered property";

(3)  Your interest in the "covered property"; or

(4)  A claim under this Equipment Breakdown Coverage.

4.  **Jurisdictional Inspections**

It is your responsibility to comply with any state or municipal boiler and pressure vessel regulations. If any "covered equipment" that is "covered property" requires inspection to comply with such regulations, at your option we agree to perform such inspection.

5.  **Legal Action Against Us**

No one may bring a legal action against us under this Equipment Breakdown Coverage unless:

a.  There has been full compliance with all the terms of this Equipment Breakdown Coverage; and

b.  The action is brought within two years after the date of the "accident" or

c.  We agree in writing that you have an obligation to pay for damage to "covered property" of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

6.  **Liberalization**

If we adopt any standard form revision for general use that would broaden the coverage under this Equipment Breakdown Coverage without additional premium, the broadened coverage will apply to this Equipment Breakdown Coverage commencing on the date that such revision becomes effective in the jurisdiction where the "accident" occurs.

7.  **Loss Payable**

a.  We will pay you and the loss payee shown in the Declarations for loss covered by this Equipment Breakdown Coverage, as interests may appear. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part or on the part of the loss payee.

b.  We may cancel the policy as allowed by the Cancellation Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel, we will mail you and the loss payee the same advance notice.

c.  If we make any payment to the loss payee,

Includes copyright material of Insurance Services Office, Inc. with its permission.

we will obtain their rights against any other party.

**8. Maintaining Your Property and Equipment**

It is your responsibility to appropriately maintain your property and equipment. We will not pay your costs to maintain, operate, protect or enhance your property or equipment, even if such costs are to comply with our recommendations or prevent loss, damage or expense that would be covered under this policy.

**9. Mortgage Holders**

a. The term mortgage holder includes trustee.

b. We will pay for direct damage to "covered property" due to an "accident" to "covered equipment" to you and each mortgage holder shown in the Declarations in their order of precedence, as interests in the "covered property" may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the "covered property."

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage, the mortgage holder will still have the right to receive loss payment, provided the mortgage holder does all of the following:

(1) Pays any premium due under this Equipment Breakdown Coverage at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so;

(3) Has notified us of any change in ownership or material change in risk known to the mortgage holder; and

(4) Has complied with all other terms and conditions of this Policy.

All of the terms of this Equipment Breakdown Coverage will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage:

(1) The mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

h. If we suspend coverage, it will also be suspended as respects the mortgage holder. We will give written notice of the suspension to the mortgage holder.

**10. Other Insurance**

If there is other insurance that applies to the same loss, damage or expense, this Equipment Breakdown Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**11. Policy Period, Coverage Territory**

Under this Equipment Breakdown Coverage:

a. The "accident" must occur during the Policy Period, but expiration of the policy does not limit our liability.

b. The "accident" must occur within the following Coverage Territory:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**12. Privilege to Adjust with Owner**

In the event of loss, damage or expense involving property of others in your care, custody or control, we have the right to settle the loss, damage or expense with respect to such property with the owner of the property. Settlement with owners of that property will satisfy any claim of yours.

Includes copyright material of Insurance Services Office, Inc. with its permission.

**13. Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by delivering or mailing a written notice of suspension to:

a.  Your last known address; or

b.  The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."

If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**14. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Equipment Breakdown Coverage has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a.  Prior to an "accident."

b.  After an "accident" only if, at time of the "accident," that party is one of the following:

(1)  Someone insured by this Policy; or

(2)  A business firm:

(a)  Owned or controlled by you; or

(b)  That owns or controls you.

**G.  DEFINITIONS**

**1.  "Accident"**

a.  "Accident" is defined in A.1.a.

b.  None of the following is an "accident," however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected:

(1)  Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

(2)  Any gradually developing condition;

(3)  Any defect, programming error, programming limitation, computer virus, malicious code, loss of "data,"

loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind;

(4)  Contamination by a "hazardous substance"; or

(5)  Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

**2.  "Boilers and Vessels"** means:

a.  Boilers;

b.  Steam piping;

c.  Piping that is part of a closed loop used to conduct heat from a boiler;

d.  Condensate tanks; and

e.  Unfired vessels which, during normal usage, operate under vacuum or pressure, other than the weight of contents.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

**3.  "Building Utilities"** means "covered equipment" permanently mounted on or in a building and used to provide any of the following services within the building: heating, ventilating, air conditioning, electrical power, hot water, elevator or escalator services, natural gas service or communications. "Building utilities" does not include personal property or equipment used in manufacturing or processing.

**4.  "Buried Vessels or Piping"** means any piping or vessel buried or encased in the earth, concrete or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

**5.  "Business Income"** means the sum of:

a.  The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

b.  Continuing normal and necessary operating expenses incurred, including employee payroll.

**6.  "Business Income Actual Annual Value"** means the "business income" for the current fiscal year that would have been earned had no "accident" occurred.

In calculating the "business income actual annual value," we will take into account the actual experience of your business before the "accident" and the probable experience you would have had without the "accident."

Includes copyright material of Insurance Services Office, Inc. with its permission.

7. **"Business Income Estimated Annual Value"** means the anticipated "business income" reported to us and shown in the Declarations. If no value is shown in the Declarations, the "business income estimated annual value" will be the most recent report of anticipated "business income" values on file with us.

8. **"Covered Equipment"**
   a. "Covered Equipment" is defined in A.1.b.
   b. None of the following is "covered equipment":
      (1) Structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported enclosure;
      (2) Foundation;
      (3) Cabinet, compartment, conduit or ductwork;
      (4) Insulating or refractory material;
      (5) "Buried vessels or piping";
      (6) Waste, drainage or sewer piping;
      (7) Piping, valves or fittings forming a part of a sprinkler or fire suppression system;
      (8) Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;
      (9) "Vehicle" or any equipment mounted on a "vehicle";
      (10) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
      (11) Dragline, excavation or construction equipment;
      (12) Equipment manufactured by you for sale; or
      (13) "Data."

9. **"Covered Property"**
   a. "Covered Property" means property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location described in the Declarations except as provided under Off Premises Property Damage coverage.
   b. None of the following is "covered property":
      (1) Accounts, bills, currency, deeds or other evidences of debt, money, notes or securities;
      (2) Fine arts, jewelry, furs or precious stones;
      (3) Precious metal, unless forming a part of "covered equipment";
      (4) Animals;
      (5) Contraband, or property in the course of illegal transportation or trade;
      (6) Land (including land on which the property is located), water, trees, growing crops or lawns; or
      (7) Shrubs or plants, unless held indoors for retail sale.

10. **"Data"** means information or instructions stored in digital code capable of being processed by machinery.

11. **"Electrical Generating Equipment"**
    a. "Electrical Generating Equipment" means equipment which converts any other form of energy into electricity. This includes, but is not limited to, the following:
       (1) Boilers used primarily to provide steam for one or more turbine-generator units;
       (2) Turbine-generators (including steam, gas, water or wind turbines);
       (3) Engine-generators;
       (4) Fuel cells or other alternative electrical generating equipment;
       (5) Electrical transformers, switchgear and power lines used to convey the generated electricity; and
       (6) Associated equipment necessary for the operation of any of the equipment listed in (1) through (5) above.
    b. "Electrical Generating Equipment" does not mean:
       (1) Elevator or hoist motors that generate electricity when releasing cable; or
       (2) Equipment intended to generate electricity solely on an emergency, back-up basis.

    This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

12. **"Extra Expense"** means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no "accident" occurred.

13. **"Hazardous Substance"** means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

14. **"Interruption of Service"**
    a. "Interruption of Service" means a failure or

disruption of the normal supply of any of the Covered Services listed in b. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in c. through f. below.

b. Covered Services are electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, steam, internet access, telecommunications services, wide area networks and data transmission.

c. The "covered equipment" must either be:

(1) Owned by a company with whom you have a contract to supply you with one of the Covered Services; or

(2) Used to supply you with one of the Covered Services and located within one mile of a location described in the Declarations.

d. If a Service Interruption Distance Limitation is indicated in the Declarations, the "covered equipment" suffering the "accident" must be located within the indicated distance of any location described in the Declarations.

e. If an Interruption of Service Waiting Period is indicated in the Declarations, no failure or disruption of service will be considered to qualify as an "interruption of service" until the failure or disruption exceeds the indicated number of hours immediately following the "accident."

f. "Interruption of service" does not include any failure or disruption, whether or not arising from or involving an "accident," in which a supplier could have continued to provide service to the location but chose for any reason to reduce or discontinue service.

15 **"Interruption of Supply"**

a. "Interruption of Supply" means a failure or disruption of the normal supply of any of the Covered Contingencies listed below, when such failure or disruption is caused by an "accident" to "covered equipment" that is located at a Contingent Business Income supplier or receiver location indicated in the Declarations. If no Contingent Business Income supplier or receiver location is indicated in the Declarations, the "covered equipment" must be owned by a supplier from whom you have received the Covered Contingency for at least six months prior to

the "accident" or a receiver to whom you have supplied the Covered Contingency for at least six months prior to the "accident."

b. Covered Contingencies are raw materials, intermediate products, finished products, packaging materials and product processing services.

16. **"Media"** means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

17. **"One Accident"** means all "accidents" occurring at the same time from the same event. If an "accident" causes other "accidents," all will be considered "one accident."

18. **"Ordinary Payroll"** means the Payroll Expenses associated with all employees other than executives, department managers and employees under contract.

As used above, Payroll Expenses means all payroll, employee benefits directly related to payroll, FICA payments you pay, union dues you pay and workers compensation premiums.

"Ordinary payroll" does not include pensions or directors fees.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

19. **"Period of Restoration"** means the period of time that begins at the time of the "accident" and continues until the earlier of:

a. The date the physical damage to "covered equipment" is repaired or replaced; or

b. The date on which such damage could have been repaired or replaced with the exercise of due diligence and dispatch,

plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

20. **"Perishable Goods"** means any "covered property" subject to deterioration or impairment as a result of a change of conditions, including but not limited to temperature, humidity or pressure.

21. **"Production Machinery"** means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

22. **"Spoilage"** means any detrimental change in state. This includes but is not limited to thawing

of frozen goods, warming of refrigerated goods, freezing of fresh goods, solidification of liquid or molten material and chemical reactions to material in process.

23. **"Vehicle"** means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

Includes copyright material of Insurance Services Office, Inc. with its permission.

6671  10/2002

BM 01 03 06 95

# Illinois Changes

This endorsement changes the policy. Please read it carefully.
These changes apply only to locations covered by the policy that are in the State of Illinois.

A. The **CANCELLATION COMMON POLICY CONDITION** is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. a. We may cancel this policy by mailing to you, any mortgagee or lienholder known to us, and to the agent or broker at the last addresses known to us written notice stating the reason for cancellation.

   b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. **If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:**

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Insurance Laws of this state.

4. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. The following is added and supersedes any provision to the contrary.

   **NONRENEWAL**

   1. If we decide not to renew this policy, we will mail written notice of nonrenewal, including the reason for nonrenewal, no less than 60 days before the expiration date to:

      a. You;

      b. The broker, if known to us, or the agent of record; and

      c. Any mortgagee or lienholder known to us.

C. **Mailing of Notices**

   We will mail cancellation and nonrenewal notices to you, the agent or broker, and any mortgagee or lienholder known to us at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BM 01 03 06 95

# Illinois Changes

This endorsement changes the policy. Please read it carefully.
These changes apply only to locations covered by the policy that are in the State of Illinois.

A. The **Mold EXCLUSION** is replaced by the following:
**Additional Exclusion**

Any indirect result of an "accident" to "covered equipment", except for "business income" and "extra expense" loss as specifically provided in this Equipment Breakdown Coverage.

B. The following is added to the **Legal Action Against Us ADDITIONAL CONDITION:**

The two year period for legal action against us is extended by the number of days between the date the statement of loss is filed with us and the date we deny the claim in whole or in part.

C. The **Other Insurance ADDITIONAL CONDITION** is replaced by the following:
10. Other Insurance
    (a)    You may have other insurance subject to the same plan, terms, conditions and provisions as this Equipment Breakdown

Coverage. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit under this Equipment Breakdown Coverage bears to the Limits of Insurance of all insurance covering on the same basis. But we will not pay more than the applicable Equipment Breakdown Limit.

    (b)    If there is other insurance covering the same loss or damage, other than that described in paragraph (a), we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Equipment Breakdown Limit.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Important Notice To Policyholders

## ILLINOIS

To our Illinois Policyholders:

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

1.
Illinois Department of Insurance
Consumer Division or Public Service Section
Springfield, Illinois 62767

2.
The Hartford Steam Boiler Inspection and Insurance Company
P.O. Box 61509
King of Prussia, PA 19406-0909
Attention: Customer Care Center


**RBN & ASSOCIATES**
Insurance Brokers

233 North Michigan Ave.
Suite 1780
Chicago, Illinois 60601
Phone 312•856•9400
Fax 312•856•9425

February 13, 2004

Ms. Rosanne Morinec
Carlton Mertz Co.
6147 W. 65th Street
Chicago, IL  60638-5303

Re:   General Liability & Pollution
      Policy # EG 1955669

Dear Ms. Morinec:

American International Specialty Lines Insurance Company has issued your General Liability/Pollution policy effective October 1, 2003 through October 1, 2004.

The policy provides a $1,000,000 limit per occurrence and $2,000,000 annually for Product Liability. There is also $1,000,000 per occurrence, $2,000,000 annually for all other covered claims excluding Medical Expense, and Fire Legal.

Policy exclusions include Lead, Asbestos, Punitive Damages, Liability of others assumed in a contract or agreement (pollution only), Underground Storage Tanks, Radioactive Matter, Criminal Fines, Terrorism, War, Nuclear, Product Recall, Professional Liability, Acid Rain, Employment Practices, Known Injury or Damage occurring prior to policy effective date, Property in Your Care, Custody or Control, Underground Storage Tanks, Prior pollution conditions if known or if an employee could have reasonably foreseen that such pollution conditions would lead to a claim.  Premium is not subject to audit at expiration.

Your General Liability includes Employee Benefits liability.  This is the Errors & Omission coverage for the administration of your employee benefits program.  Losses are subject to a $1,000 deductible.  There is a $1,000,000 Limit per occurrence and annually.  Employee Benefit Liability is "Claims-Made" meaning only claims reported during the policy period will be considered for coverage.

Expenses incurred in the Defense of a third party through Contractual Liability will reduce your limit of liability if:  (1) you are not named in the same suite, or (2) the third party will not cooperate with your insurer.

Pollution Liability (excluding coverage off your site) is included with a limit of $1,000,000 per loss which includes defense costs, subject to any reduction in the general aggregate discussed above.  This coverage is on a CLAIMS MADE basis with a retroactive date of 10/1/03.  Only claims occurring and reported between 10/1/03 and the policy's expiration will be considered for coverage.  In event of a claim the carrier must be notified within 7 days of its occurrence, otherwise coverage is excluded.

Covered pollution occurrences include bodily injury or property damage on your site, excluding pollution clean-up of conditions on your site (6147 W. 65th Street, Chicago, IL 60638).  Coverage is also provided for bodily injury, property damage excluding clean-up costs for a pollution condition on your site, but which migrated off your site.

Ms. R. Morinec
Page Two

Pollution coverage is provided under Coverage "D" of the General Liability policy. Losses are subject to a deductible of $25,000.

Claims Made means only claims, which occurred and are reported after the policy retro date and before the policy expiration, will be considered for coverage.

An Extended Reporting period provides forty (40) months time to report those claims, which occurred after the Retro date and before the policy's expiration date. An Extended Reporting period must be requested in writing within 30 days from the end of this agreement. There may be an additional premium charge of up to 200% of the annual policy premium for this coverage.

If you should have any questions after your review of the enclosed material, please do not hesitate to contact our office.

Sincerely,

*Richard T. Scodro*

Enclosures



# AMERICAN INTERNATIONAL
# SPECIALTY LINES INSURANCE COMPANY

A Capital Stock Insurance Company
(herein called the Company)
175 Water Street, Twelfth Floor
New York, NY 10038

A Member Company
of American International Group, Inc.

## COMMERCIAL GENERAL LIABILITY AND POLLUTION LEGAL LIABILITY DECLARATIONS
## COVERAGE D IS CLAIMS MADE — PLEASE READ THE ENTIRE FORM CAREFULLY

**POLICY NUMBER:** EG   1955669                    **RENEWAL OF:** NEW

**ITEM 1. NAMED INSURED:**
L. CARLTON MERTZ CO.

**MAILING ADDRESS:**
6147 WEST 65TH STREET
CHICAGO, IL 60638-5303

**PRODUCER:**                                   **PRODUCER NO:** 58692
RBN & ASSOCIATES, INC.
233 N MICHIGAN AVE., STE 1780
CHICAGO, IL 60601

**ITEM 2. POLICY PERIOD:**        **From:** October 1, 2003      **To:** October 1, 2004
At 12:01 AM Standard Time at your mailing address shown above

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU
TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 3. LIMITS OF INSURANCE**

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Product-Completed Operations) | $2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| EACH LOSS LIMIT (COVERAGE D. POLLUTION LEGAL LIABILITY) | $1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $50,000 |
| MEDICAL EXPENSE LIMIT | $5,000        Any One Person |

**ITEM 4. DEDUCTIBLE - COVERAGE D. POLLUTION LEGAL LIABILITY**

| | |
|---|---|
| a. COVERAGE D-1: DEDUCTIBLE | $25,000 |
| b. COVERAGE D-2: DEDUCTIBLE | $25,000 |

**ITEM 5. RETROACTIVE DATES**
Coverage D of this insurance does not apply to **pollution conditions** which occur before the Retroactive Date shown below.
Retroactive Date: 10/01/2003

**ITEM 6. INSURED PROPERTY - COVERAGE D POLLUTION LEGAL LIABILITY ONLY: PER ENDORSEMENT 74521**

**ITEM 7. FORMS OF BUSINESS:**
☐ Individual       ☐ Partnership       ☐ Joint Venture       ☒ Organization (Other than Partnership or Joint Venture)
Business Description:   INDUSTRIAL CLEANER
Location of All Premises You Own, Rent or Occupy:  As per application

**ITEM 8. ADVANCED PREMIUM:**  $25,900.00
Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002:
Not Applicable, Coverage Rejected By Insured

**ITEM 9. FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY:  APPLICATION AND FORMS SCHEDULE**

75341 (01/00)
CI0524

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

NOTICE:  THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

**FORMS SCHEDULE**

**Named Insured:**    L. CARLTON MERTZ CO.

**Policy Number:**    EG    1955669
**Effective 12:01 AM:**    October 1, 2003

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AISLIC Eagle Occurrence Declarations Page | 75341 | (01/00) |
| | AISLIC Eagle Occurrence Policy | 75342 | (01/00) |
| | Notice of Loss/Notice of Claim | CI1141 | (09/00) |
| 1 | Named Insured | 69806 | (02/98) |
| 2 | Additional Insured Vendors | 65421 | (05/96) |
| 3 | Disc-Restrict Poll Cov D-1 & D-2 | 74528 | (11/99) |
| 4 | Cov D-2-Limit 3rd Party Claims Off-Site BI or PD | 73486 | (08/99) |
| 5 | Employee Benefits Liability Coverage - USA | 51767 | (04/91) |
| 6 | Pol Excl - Prods & Hstl Fire Excep | 68000 | (07/00) |
| 7 | Minimum Earned Premium Endorsement | 77992 | (05/01) |
| 8 | Insured Property(s) - Cov. D | 74521 | (10/00) |
| 9 | Premium Audit Endt - Not Auditable | 69702 | (02/98) |
| 10 | Service Of Suit - Illinois | 80145 | (05/02) |
| 11 | Waiver of Subrogation - USA | 65387 | (05/96) |
| 12 | Terrorism Excl - All (Incl Cert Acts Of Terrorism) | 81268 | (12/02) |
| 13 | War Exclusion Endorsement | 79106 | (12/01) |
| 14 | Cov A,B,C,D Limit UST Excl | 73477 | (08/99) |
| 15 | Coverage D-2, Limitation Endorsement | MNSCPT | (10/03) |

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

## COMMERCIAL GENERAL LIABILITY AND POLLUTION LEGAL LIABILITY COVERAGES FORM

### COVERAGES D-1 AND D-2 PROVIDE "CLAIMS MADE AND REPORTED" COVERAGE, AND HAVE REPORTING REQUIREMENTS DIFFERENT FROM THOSE FOR COVERAGES A AND B. COVERAGES D-1 AND D-2 REQUIRE THAT A CLAIM BE MADE UPON THE INSURED AND REPORTED IN WRITING TO US DURING THE SAME POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY.

### PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

he word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in bold have special meaning. Refer to DEFINITIONS (Section VI).

## SECTION I - COVERAGES

### COVERAGE A. - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this Coverage applies. We will have the right and duty to defend any **suit** seeking damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this Coverage does not apply. We may, at our discretion, investigate any **occurrence** and settle any **claim** or **suit** that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSUR-

ANCE AND DEDUCTIBLE (Section III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B, medical expenses under Coverage C, or **loss** under Coverages D-1 or D-2.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to **bodily injury and property damage** only if:

      (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

      (2) The **bodily injury** or **property damage** occurs during the **policy period**.

   c. Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      Bodily injury or **property damage** expected or intended from the standpoint of the insured. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)
CI0525

IT IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

b. **Professional Services**

**Bodily injury** or **property damage** arising out of the rendering or failure to render any **professional services** by or for you.

c. **Contractual Liability**

**Bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of **bodily injury** or **property damage**, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

d. **Liquor Liability**

**Bodily injury** or **property damage** for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

e. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

f. **Employer's Liability**

**Bodily injury** to:

(1) An **employee** of the insured, arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that **employee** as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an **insured contract**.

g. **Pollution**

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured However, Subparagraph (a) does not apply to:;

(i) **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) **Bodily injury** or **property damage** for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at the premises, site or location and such premises, site or

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

location is not or never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire;**

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations: If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph (d) does not apply to:

(i) **Bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) **Bodily injury** or **property damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire;**

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(b) **Claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, this paragraph does not apply to liability for damages because of **property damage** that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such **claim** or **suit** by or on behalf of a governmental authority.

h. **Aircraft, Auto or Watercraft**

**Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **loading or unloading.**

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

(2) A watercraft you do not own that is:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge;

(3) Parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft; or

(5) **Bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraph f. (2) or f. (3) of the definition of **mobile equipment** (Section VI).

i. **Mobile Equipment**

**Bodily injury** or **property damage** arising out of:

(1) The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any insured; or

(2) The use of **mobile equipment** in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

j. **War**

**Bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

k. **Damage to Property**

**Property damage** to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

(3) Property loaned to you;

(4) **Personal property** in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf

are performing operations, if the **property damage** arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph (1), (3) and (4) of this exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage to Premises Rented To You as described in LIMITS OF INSURANCE AND DEDUCTIBLE (Section III).

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard**.

l. **Damage to Your Product**

**Property damage** to **your product** arising out of it or any part of it.

m. **Damage to Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. **Damage to Impaired Property or Property Not Physically Injured**

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

o. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) **Your product;**

(2) **Your work;** or

(3) **Impaired property;**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. **Personal and Advertising Injury**

Bodily Injury arising out of **personal and advertising injury.**

q. **Radioactive Matter**

**Bodily Injury** or **property damage** arising out of the actual, alleged or threatened exposure of persons or property to any radioactive matter.

r. **Asbestos**

(1) **Bodily injury** arising out of the presence, ingestion or inhalation of, or exposure to, asbestos in any form or products containing asbestos; or

(2) **Property damage** arising out of the presence of, or exposure to, asbestos in any form or products containing asbestos.

s. **Lead**

(1) **Bodily injury** arising out of the presence, ingestion, inhalation or absorption of, or exposure to, lead in any form or products containing lead; or

(2) **Property damage** arising out of the presence of, or exposure to, lead in any form or products containing lead.

t. **Employment - Related Practices**

Bodily injury to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of the person as a consequence of **bodily injury** to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

u. **Covered by Other Coverages**

Any **claim** or part thereof which may be alleged as covered under this Coverage of this Policy, if we have accepted coverage or coverage has been held to apply for such **claim** or part thereof under any other Coverage in this Policy. This exclusion does not apply to any **claim** for medical expenses under Coverage C caused by **bodily injury** which is covered under Coverage A.

Exclusions c. through n. do not apply to damage by fire to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE AND DEDUCTIBLE (Section III).

**COVERAGE   B. - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this Coverage applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

any **suit** seeking damages for **personal and advertising injury** to which this Coverage does not apply. We may, at our discretion, investigate any offense and settle any **claim** or **suit** that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE AND DEDUCTIBLE (Section III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B, medical expenses under Coverage C, or **loss** under Coverages D-1 or D-2.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to **personal and advertising injury** caused by an offense arising out of your business, but only if the offense was committed in the **coverage territory** during the **policy period.**

**Exclusions**

This insurance does not apply to:

a. **Personal and advertising injury:**

(1) Caused by or at the direction of the insured with the knowledge that the act would violate that rights of another and would inflict **personal and advertising injury;**

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the **policy period;**

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your **advertisement;**

(7) Arising out of that failure of goods, products or services to conform with any statement of quality or performance made in your **advertisement;**

(8) Arising out of the wrong description of the price of goods, products or services stated in your **advertisement;**

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 21.a., b. and c. of **personal and advertising injury** under SECTION VI - DEFINITIONS;

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage migration, release or escape of **pollutants** at any time;

(11) Arising out of the actual, alleged or threatened exposure of persons or property to any radioactive matter;

(12) Arising out of the presence, ingestion or inhalation of, or exposure to, asbestos in any form or products containing asbestos;

(13) Arising out of the presence, ingestion or inhalation or absorption of, or exposure to, lead in any form or products containing lead;

(14) To:

(a) A person arising out of any:

(i) Refusal to employ that person;

(ii) Termination of that person's employment; or

(iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person.

(b) The spouse, child, parent, brother or sister of the person as a consequence of **bodily injury** to that person at whom any of the employment-related practices described in paragraphs (i), (ii), or (iii) above is directed.

This exclusion applies:

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

(a) Whether the insured may be liable as an employer or in any other capacity; and

(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury;

(15) Arising out of the rendering or failure to render any **professional services** by or for you.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(2) **Claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of **pollutants**.

c. Any **claim** or part thereof which may be alleged as covered under this Coverage of this Policy, if we have accepted coverage or coverage has been held to apply for such **claim** under any other Coverage in this Policy.

## COVERAGE C. - MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for **bodily injury** caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(i) The accident takes place in the **coverage territory** and during the **policy period**;

(ii) The expenses are incurred and reported to us within one year of the date of the accident; and

(iii) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral service.

### 2. Exclusions

We will not pay expenses for **bodily injury**:

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an **employee of any insured**, if benefits for the **bodily injury** are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the **products - completed operations hazard.**

g. Excluded under Coverage A.

h. (1) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants;**

(2) For any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(b) Any **claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of **pollutants**.

i. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75242 (01/00)

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

## COVERAGE D. - POLLUTION LEGAL LIABILITY

### Insuring Agreements

#### COVERAGE D-1 - THIRD PARTY CLAIMS FOR ON-SITE BODILY INJURY OR PROPERTY DAMAGE

a. We will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims** in the **coverage territory** for **bodily injury** which takes place while the person injured is on the **insured property**, or for **property damage** to **personal property** of a third-party which takes place while such **personal property** is on the **insured property**. All of the following require- ments must be satisfied for this Coverage D-1 to apply:

(1) The **bodily injury** or **property damage** results from **pollution conditions** on or under the **insured property** and such **pollution conditions** did not commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period**; and

(2) A **claim** for **bodily injury** or **property damage** is first made against the insured and reported to us, in writing, during the **policy period** or any **extended reporting period** we provide under. EXTENDED REPORTING PERIODS (Section V).

A **claim** for **bodily injury** or **property damage** by a person or organization will be deemed to have been made when notice of such **claim** is received and recorded by any insured.

#### COVERAGE D-2 - THIRD PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS

b. We will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims** in the **coverage territory** for **bodily injury**, **property damage** or **clean-up costs** beyond the boundaries of the **insured property**. All of the following requirements must be satisfied for this Coverage D-2 to apply:

(1) The **bodily injury**, **property damage**, or **clean-up costs** result from **pollution conditions** on or under the **insured property** which have migrated beyond the boundaries of the **insured property**, and such **pollution conditions** did not

commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period**; and

(2) A **claim** for **bodily injury**, **property damage**, or **clean-up costs** is first made against the insured and reported to us, in writing, during the **policy period** or any **extended reporting period** we provide under EXTENDED REPORTING PERIODS (Section V).

A **claim** for **bodily injury**, **property damage**, or **clean-up costs** by a person or organization will be deemed to have been made when notice of such **claim** is received and recorded by any insured.

### DEFENSE

c. We will have the right and duty to defend any **claim** seeking **loss** to which Coverage D-1 or D-2 applies. However, we will have no duty to defend the insured against any **claim** for **bodily injury**, **property damage**, or **clean-up costs** to which Coverage D-1 or D-2 does not apply. We may, at our discretion, investigate and settle any **claim** that may result. But:

(1) The amount we will pay for **loss** is limited as described in LIMITS OF INSURANCE AND DEDUCTIBLE (Section III);

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B, medical expenses under Coverage C, or **loss** under Coverage D-1 or D-2;

(3) Defense costs, charges and expenses are included in **loss**, reduce the applicable limit of insurance as described in Section III., and are included within the Deductible amount shown in Item 4 of the Declarations;

(4) If the insured refuses to consent to any settlement recommended by us and acceptable to the claimant, our duty to defend the insured shall then cease and the insured shall thereafter negotiate or defend such **claim** independently of us and our liability shall not exceed the amount, less the Deductible or any outstanding Deductible balance, for which the **claim** could have been settled if our recommendation was accepted.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

**Exclusions - Applicable to Coverages D-1 and D-2**

This insurance does not apply to **claims** or **loss**:

a. Which may be alleged as covered in whole or in part under this Coverage of this Policy, if we have accepted coverage or if coverage has been held to apply for such **claim** under any other Coverage of this Policy.

b. Arising from **bodily injury** to an **employee** of the insured or its parent, subsidiary or affiliate arising out of and in the course of employment by the insured or its parent, subsidiary or affiliate.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

c. Arising from **pollution conditions** existing prior to the inception date of this Policy and not disclosed in the application for this Policy, if any **responsible insured** knew or reasonably could have expected that such **pollution conditions** could give rise to **bodily injury, property damage, clean-up costs**, or a **claim** under this Policy.

This exclusion does not apply to such **pollution conditions** which commenced during the term of a prior Pollution Legal Liability Policy or Coverage issued by us or an insurance company which is a member company of the American International Group, Inc. (hereinafter "affiliate") with substantially the same coverage as this Policy, provided that:

(1) The insured has maintained Pollution Legal Liability insurance with us or our affiliate on a successive and uninterrupted basis since the commencement of the **pollution conditions**; and

(2) The insured made full and complete disclosure of such **pollution conditions** on each renewal application for Pollution Legal Liability insurance with us or our affiliate.

However, none of the preceding provisions shall restrict or prevent us or our affiliate where appropriate, from exercising any right to cancel or non-renew either this Policy or the coverage for a particular **insured property**.

d. Arising as a result of liability of others assumed by the insured under any contract or agreement, unless the liability of the insured would have attached in the absence of such contract or agreement, or the contract or agreement is an **insured contract**.

e. With respect to Coverage D-2 only, arising from **bodily injury, property damage** or **clean-up costs** on or under **Insured property**, whether or not incurred in the course of avoiding or mitigating **bodily injury, property damage** or **clean-up costs** beyond the boundaries of the **insured property**.

Under Coverage D-2, where **pollution conditions** exist both on or under the **insured property**, and also beyond the boundaries of **insured property**, we will pay only for **bodily injury** or **property damage** beyond the boundaries of the **insured property** directly caused by the **pollution conditions**, which have migrated beyond the boundaries of the **insured property**, and **clean-up costs** beyond the boundaries of the **insured property** directly necessitated by the **pollution conditions** which have migrated beyond the boundaries of the **insured property**.

f. Arising out of the ownership, maintenance, use, operation, **loading or unloading** beyond the boundaries of the **insured property**, of any conveyance.

g. Arising from **pollution conditions** commencing subsequent to the time an **insured property**, other than a **non-owned location**, is abandoned.

h. Arising from **pollution conditions** based upon or attributable to any **responsible insured's** intentional, knowing, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

i. Arising from **pollution conditions** that result from an intentional or illegal act or omission of a **responsible insured** if he or she knew or could have reasonably foreseen that the **pollution conditions** would result.

j. Arising from the presence of asbestos or any asbestos-containing materials or lead-based paint installed in or applied in, on or to any building or other structure.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

k. For costs, charges or expenses incurred by the insured for goods supplied or services performed by the staff or salaried **employees** of the insured, or its parent, subsidiary or affiliate, except if in response to any emergency or pursuant to **environmental laws** which requires immediate remediation of **pollution conditions**, or unless such costs, charges or expenses are incurred with our prior written approval at our sole discretion.

l. For any punitive, exemplary or the multiplied portion of multiplied damages or any civil, administrative or criminal fines, penalties or assessments, except where such damages, fines, penalties or assessments are insurable by applicable law; or any criminal fines, penalties or assessments.

m. By any insured against any other insured.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any **claim** we investigate or settle, or any **suit** against an insured we defend under Coverages A and B:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the **claim** or suit, including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the **suit**.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a **suit** and an indemnitee of the insured is also named as a party to the **suit**, we will defend that indemnitee if all of the following conditions are met:

   a. The **suit** against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract**;

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same **insured contract**;

   d. The allegations in the **suit** and the information we know about the **occurrence** are such that no conflict appears to exit between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of the indemnitee against such **suit** and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the **suit**;

         (b) Immediately send us copies of any demands notices, summonses or legal papers received in connection with the **suit**;

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the **suit**; and

         (b) Conduct and control the defense of the indemnitee in such **suit**.

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee,

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

cessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b .(2) of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for **bodily injury** and **property damage** and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph 2f. above, are no longer met.

## SELECTION OF COUNSEL - APPLICABLE TO COVERAGES A, B, D-1 and D-2

In the event the insured is entitled by law to select independent counsel to defend a **suit** at our expense, the attorney fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar **claims** or **suits** in the community where the **claim** or **suit** arose or is being defended.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending **claims** or **suits** similar to the one pending against the insured and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the insured agrees that counsel will timely respond to our requests for information regarding the **claim** or **suit**.

Furthermore, the insured may at any time, by the insured's signed consent, freely and fully waive these rights to select independent counsel.

## SECTION II - WHO IS AN INSURED

1. Under Coverages A, B and C, if you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership or joint venture, you are an insured. Your **executive officers** and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Under Coverages A, B and C, each of the following is also an insured:

   a. Your **employees**, other than either your **executive officers** (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these **employees** is an insured for:

      (1) **Bodily injury** or **personal and advertising injury:**

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-**employee** while that co-**employee** is either in the course of his or her employment or while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-**employee** as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) **Property damage** to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

control is being exercised for any purpose by

you, any of your **employees**, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your **employee**) or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Under Coverages A, B and C, with respect to **mobile equipment** registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. **Bodily injury** to a co-**employee** of the person driving the equipment; or

b. **Property damage** to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Under Coverages A, B and C, any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the

organization or the end of the **policy period**, whichever is earlier;

b. Coverage A does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to **personal and advertising injury** arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

5. Under Coverages D-1 and D-2, each of the following is an insured:

a. The Named Insured designated in the Declarations;

b. Any director, officer, partner or **employee** of the Named Insured for acts within the scope of his or her duties as such; and

c. Any person or entity designated as an additional insured by an endorsement issued to form a part of this Policy.

## SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. **Claims** made or **suits** brought; or

c. Persons or organizations making **claims** or bringing **suits**.

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of **bodily injury** or **property damage** included in the **products-completed operations hazard**;

c. Damages under Coverage B; and

d. **Loss** under Coverages D-1 or D-2.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of **bodily injury** and **property**

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75842 (01/00)

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

damage included in the **products-completed operations hazard.**

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all **personal and advertising injury** sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all **bodily injury** and **property damage** arising out of any one **occurrence.**

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of **property damage** to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of **bodily injury** sustained by any one person.

8. Subject to 2. above, the Each Loss Limit is the most we will pay under Coverages D-1 or D-2 in excess of the Deductible amounts stated in Item 4 of the Declarations, for all **loss** because of **bodily injury, property damage** or **clean-up costs** arising out of the same, related, or continuous **pollution conditions.** If a **claim** for **bodily injury, property damage,** or **clean-up costs** is first made against the insured and reported to us during the **policy period** in accordance with Section IV.2. of this Policy, all **claims** for **bodily injury, property damage** or **clean-up costs** arising from the same, related or continuous **pollution conditions** which are first made against the insured and reported under a subsequent Pollution Legal Liability policy or coverage issued by us or our affiliate providing substantially the same coverage as this Policy, shall be deemed to have been first made against the insured and reported to us during this **policy period.**

Coverage under this Policy for such subsequent **claims** shall not apply, however, unless at the time such **claims** are first made and reported, the insured has maintained with us or our affiliate Pollution Legal Liability coverage substantially the same as this coverage on a continuous, uninterrupted basis since the first such **claim** was made against the insured and reported to us.

If the same, related or continuous **pollution conditions** result in coverage under more than one coverage section of this Policy, the highest applicable Deductible under such Coverages shall apply.

9. The Limits of Insurance apply in excess of the Deductible amount shown in Item 4.a. of the Declarations for Coverage D-1 and the Deductible amount shown in Item 4.b. of the Declarations for Coverage D-2. The Deductible amount applies to each **loss** under Coverage D-1 or D-2. You shall promptly reimburse us for advancing any portion of **loss** falling within the Deductible.

10. The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the **policy period** shown in the Declarations, unless the **policy period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or that of the insured's estate will not relieve us of our obligations under this Policy.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   **Applicable to Coverages A, B and C**

   a. You must see to it that we are notified as soon as practicable in writing of an **occurrence** or offense which may result in a **claim.** Notice should include:

      (1) How, when and where the **occurrence** or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the **occurrence** or offense.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

Notice to a broker or independent insurance agent does not constitute notice to us.

b. If a **claim** is received by any insured, you must see to it that we receive prompt notice of the **claim**. If notice is given verbally, you must confirm such notice to us in writing as soon as practicable, but not later than sixty (60) days from the date you received the **claim**.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim** or a **suit**;

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation, settlement or defense of the **claim** or **suit**; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e. All Notices shall be made in writing and addressed to:

   Home Office Manager, Pollution Legal Liability
   AIG Technical Services, Inc.
   Environmental Claims Department
   80 Pine Street, Sixth Floor
   New York, New York 10005

   and

   Division Attorney - Pollution Legal Liability
   American International Specialty Lines Insurance Company
   175 Water Street, Twelfth Floor
   New York, New York 10038

   or other address we substitute in writing.

**Applicable to Coverages D-1 and D-2**

f. (1) In the event of a **claim**, the insured shall, notify us in writing as soon as practicable and in any event during the **policy period** or **extended reporting period**.

The insured shall furnish information at our request. When a **claim** has been made, the insured shall forward to us as soon as practicable after receipt, or receipt by the insured's representative or agent, the following:

   (a) All correspondence between the insured and any third-party claimant;

   (b) All demands, summonses, notices or other processes or papers filed with a court of law, administrative agency or an investigative body;

   (c) All technical reports, laboratory data, field notes or any other documents generated by persons the insured has hired to investigate or remediate **pollution conditions**;

   (d) All expert reports, investigations and data collected by experts the insured has retained, whether or not you intend to use the material for any purpose; and

   (e) Any other information the insured has developed or discovered concerning the **claim**, whether or not the insured deems such information to be relevant to the **claim**.

(2) In the event of **pollution conditions**, the insured shall give notice of such **pollution conditions** as soon as practicable and such notice shall include, at a minimum, information sufficient to identify the Named Insured, the **insured property**, the names of persons with knowledge of the **pollution conditions** and all known and reasonably obtainable information regarding the time, place, cause, nature of and other circumstances of the **pollution conditions**. Written notice shall be made on a notice of loss form supplied by us.

(3) (a) If during the **policy period**, the insured first becomes a aware of **pollution conditions** which it reasonably expects may result in a **claim** under Coverage D-1 or D-2, the insured may provide written notice to us during the **policy period** containing all the information required by Subparagraph (3)(b) below, Any **claim** subsequently made against the insured and reported to us within five

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

(5) years after the end of the **policy period**, or the policy period of any continuous, uninterrupted renewal of this Policy, shall be deemed to have been first made and reported during the **policy period**. Such **claim** shall be subject to the terms, conditions and limits of coverage of this Policy.

(b) It is a condition precedent to the coverage afforded by Subparagraph (3)(a) above that the written notice contain all of the following information: (i) the cause of the **pollution conditions**; (ii) the **insured property** upon which the **pollution conditions** took place; (iii) the **bodily injury**, **property damage** or **clean-up costs** which have resulted or may result from such **pollution conditions**; (iv) the insured(s) which may be subject to the **claim** and any potential claimant(s); (v) all engineering information available on the **pollution conditions** and any other information that we deem reasonably necessary; and (vi) the circumstances by which and the date the insured first became aware of the potential **claim**.

(4) All notices under this Section IV.2.f. shall be made in writing and addressed to:

Home Office Manager, Pollution Legal Liability
AIG Technical Services, Inc.
Environmental Claims Department
80 Pine Street, Sixth Floor
New York, New York 10005

and

Division Attorney - Pollution Legal Liability
American International Specialty Lines Insurance Company
175 Water Street, Twelfth Floor
New York, New York 10038

or other address we substitute in writing.

Notice to a broker or independent insurance agent does not constitute notice to us.

(5) No costs, charges or expenses shall be incurred in the defense or investigation of **claims** without our consent, which shall not be unreasonably withheld. No insured will, except at its own cost, voluntarily enter into a settlement,

make a payment, assume any obligation, or incur any expense, other than for first aid or in response to an emergency or pursuant to state law requiring immediate remediation of **pollution conditions**, without our consent, which shall not be unreasonably withheld.

3. **Legal Action Against Us**

**Applicable to Coverages A, B and C**

No person or organization has a right under this Policy:

a. To join us as a party or otherwise bring us into a **suit** asking for damages from an insured; or

b. To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**Applicable to Coverages D-1 and D-2**

No action shall lie against us, unless as a condition precedent thereto, there shall have been **full** compliance with all of the terms of this Policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and us.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by the Policy. No person or organization shall have any right under this Policy to join us as a party to any action against the insured to determine the insured's liability, nor shall we be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve us of any of our obligations hereunder.

4. **Other Insurance**

**Applicable to Coverages A and B**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for **your work**;

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for **property damage** to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, **autos** or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any **suit** if any other insurer has a duty to defend the insured against that **suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**Applicable to Coverages D-1 and D-2**

If other valid and collectible insurance is available to the insured for **loss** covered under the terms and conditions of Coverages D-1 or D-2, our obligation to the insured shall be as follows:

d. (1) This insurance is primary, and our obligations are not affected unless any of the other insurance is also primary. In that case, we will share with all such other insurance by the method described in Subparagraph (2) below.

(2) If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

You shall promptly upon our request provide us with copies of all policies potentially applicable to **loss** covered by Coverages D-1 or D-2.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

**Premium Audit**

a. We may examine and audit your books and records as they relate to this Policy at any time during the **policy period** and up to three years afterward.

b. We will compute all premiums for this Policy in accordance with our rules and rates.

c. Premium shown in this Policy as advance Premium is a deposit premium only. At the premium close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

d. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this Policy, you agree:

a. The statements in the Declarations and application for this Policy are accurate and complete;

b. Those statements are based upon representations you made to us;

c. We have issued this Policy in reliance upon your representations; and

d. This Policy embodies all agreements existing between the insured and us or any of our agents relating to this insurance.

7. **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom **claim** is made or **suit** is brought.

8. **Sole Agent**

The Named Insured first listed in Item 1 of the Declarations shall act on behalf of all other insureds, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of

cancellation or nonrenewal, and the exercise of the rights provided in EXTENDED REPORTING PERIOD (Section V.).

9. **Assignment**

This Policy may not be assigned without our prior written consent. Assignment of interest under this Policy shall not bind us until our consent is endorsed thereon.

10. **Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop us from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

11. **Transfer of Rights of Recovery Against Others to Us**

**Applicable to Coverages A, B and C**

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **suit** or transfer those rights to us and help us enforce them.

**Applicable to Coverages D-1 and D-2**

If the insured has rights to recover all or part of any payment we have made under Coverage D-1 or D-2, those rights are transferred to us. The insured must do nothing after loss to impair them. The insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assigning its rights against any person or organization who caused **pollution conditions** on account of which we made any payment under Coverage D-1 or D-2. Any recovery as a result of subrogation proceedings arising out of the payment of **loss** covered under this Policy shall accrue first to the insured to the extent of any payments in excess of the limit of coverage; then to us to the extent of our payment under the Policy; and then to the insured to the extent of its Deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

**2. Cancellation**

This Policy may be cancelled by the first Named Insured by surrender thereof to us or any of our authorized agents or by mailing to us written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by us only for the reasons stated below by mailing to the first Named Insured at the address shown in the Policy, written notice stating when not less than 60 days (10 days for nonpayment of premium) thereafter such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

a.  Material misrepresentation by the insured;

b.  The insured's failure to comply with the terms, conditions or contractual obligations under this Policy, including failure to pay any Deductible when due;

c.  Failure to pay any premium when due;

d.  A change in operations at an **insured property** during the **policy period** which materially increases a risk covered under this Policy.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery of such written notice either by the first Named Insured or by us shall be equivalent to mailing. If the first Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**13. When We Do Not Renew**

If we decide not to renew this Policy, we will mail or deliver to the first Named Insured written notice of the nonrenewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**14. Change in Reference**

In any endorsement to this policy, any references to "COMMERCIAL GENERAL LIABILITY COVERAGE PART" shall be deemed to be replaced with the following reference: "COMMERCIAL GENERAL LIABILITY AND POLLUTION LEGAL LIABILITY COVERAGES FORM".

15. **Service of Suit** - It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, of the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street, New York, N.Y. 10270, or his or her representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designate the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

16. **Our Rights and Your Duties in the Event of Pollution Conditions (Applicable to Coverages D-1 and D-2)**

We shall have the right but not the duty to clean up or mitigate **pollution conditions**, upon receiving notice as provided in Section IV.2., of this Policy. In the case of the exercise of this right, you, upon our demand, shall promptly reimburse us for any element of **loss** we advance falling within the Deductible pursuant to Section III. You shall have the duty to clean up **pollution conditions** to the extent required by **environmental laws**, by retaining competent professional(s) or contractor(s) mutually acceptable to you and us. We shall have the right but not the duty to review and approve all aspects of any such cleanup. You shall notify us of

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)

actions and measures taken pursuant to this paragraph.

17. **Cooperation (Applicable to Coverages D-1 and D-2)**

The insured must cooperate with us and offer all reasonable assistance in the investigation and defense of **claims**. We may require that the insured submit to examination under oath, and attend hearings, depositions and trials. In the course of investigation or defense, we may require written statements or the insured's attendance at meetings with us. The insured must assist us in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses.

18. **Right of Access and Inspection**

Our authorized representatives shall have the right and opportunity, but not the obligation, when we so desire, to interview persons employed by the insured and to inspect at any reasonable time, during the **policy period** or thereafter, the **insured property** and all improvements, structures, products, ways, works, machinery and appliances thereon; but neither we nor our representatives shall assume any responsibility or duty to the insured or to any other party, person or entity, by reason of such right or inspection. Neither our right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon shall constitute an undertaking on behalf of the insured or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practices or are in compliance with any law, rule or regulation. You agree to provide appropriate personnel to assist our representatives during any inspection.

19. **Access to Information (Applicable to Coverages D-1 and D-2)**

You agree to provide to us any and all information developed or discovered by the insured concerning **clean-up costs** for **pollution conditions** covered under this Policy, whether or not deemed by the to be relevant to such **clean-up costs**, and to provide us free access to interview any insured and review any documents of the insured.

20. **Concealment or Fraud (Applicable to Coverages D-1 and D-2)**

Coverages D-1 and D-2 shall be void if, whether before or after **cleanup costs** are incurred or a

**claim** is first made, you have willfully concealed or misrepresented any fact or circumstance material to the granting of such coverages, the description of the **insured property**; or the interest of the insured therein.

**SECTION V - EXTENDED REPORTING PERIOD - COVERAGES D-1 AND D-2**

1. We will provide an automatic limited **extended reporting period** as described in paragraph 3 or, if you purchase it, an optional forty (40) month **extended reporting period** as described in paragraph 4, only upon termination of coverage as defined in paragraph 5 for any reason except non-payment of premium.

2. If we provide an **extended reporting period**, the following is added to the end of paragraph 1.a. of Section I - Coverage D-1 and paragraph 1.b. of Section I - Coverage D-2:

   A **claim** first made and reported during the **extended reporting period** will be deemed to have been made on the last day of the **policy period**, provided that the **claim** arises from **pollution conditions** that commenced before the end of the **policy period** (but not before any applicable Retroactive Date).

   The **extended reporting period** will not reinstate or increase the Limits of Insurance or extend the **policy period**.

3. The automatic limited **extended reporting period** will be sixty (60) days from termination of coverage as defined in paragraph 5 for all **insured property**.

   This automatic limited **extended reporting period** applies only if no subsequent insurance you purchase applies to the **claim**, or would apply but for the exhaustion of its applicable limits of insurance. The automatic limited **extended reporting period** in its entirety shall not apply if the optional **extended reporting period** becomes effective.

   The automatic limited **extended reporting period** may not be cancelled.

4. If you purchase the optional **extended reporting period** Endorsement, the **extended reporting period** will be forty (40) months from termination of coverage as defined in paragraph 5 for all **insured property**. We will issue that Endorsement if the first Named Insured shown in the Declarations:

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

a. Makes a written request for it which we receive within thirty (30) days after termination of coverage as defined herein; and

b. Promptly pays the additional premium when due.

This optional **extended reporting period** Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be cancelled, provided that all other terms and conditions of the policy are met.

5. Termination of coverage occurs:

   a. At the time of cancellation or nonrenewal of this Policy by you or by us;

   b. At the time of the deletion of an **insured property** from this Policy by us; or

   c. At the time an **insured property** is sold, leased, given away, or abandoned or for which operational control has been relinquished by you.

6. The premium for the optional **extended reporting period** Endorsement will not exceed 200% of the annual premium and will be fully earned when the Endorsement takes effect.

**SECTION VI - DEFINITIONS**

1. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

3. **Bodily injury** means, with respect to Coverages A, B, and C, bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

   **Bodily injury** means, with respect to Coverages D-1 and D-2, physical injury, or sickness, disease, mental anguish or emotional distress sustained by any person, including death resulting therefrom.

4. **Claim** means a written demand received by the insured seeking a remedy and alleging liability or responsibility on the part of the insured for compensatory damages under Coverage A or B, or **loss** under Coverage D-1 or D-2. **Claim** includes a **suit**.

5. **Clean-up costs** means expenses, including reasonable and necessary legal expenses incurred with our written consent, incurred in the investigation, removal, remediation or disposal of soil, surfacewater, groundwater or other contamination:

   a. Which have been incurred by the government or any political subdivision of the United States of America, any state thereof, or Canada or any province thereof; or by a third party; or

   b. To the extent required by **environmental laws**, or specifically mandated by court order, the government or any political subdivision of the United States of America, any state thereof, or Canada or any province thereof, duly acting under the authority of **environmental laws**.

6. **Coverage territory** means:

   **Applicable to Coverages A, B and C**

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a **suit** on the merits, in the territory described in a. above or in a settlement we agree to.

   **Applicable to Coverages D-1 and D-2**

   d. **Claims** arising from **pollution conditions** in the United States, its territories or possessions or Canada and only if such **claims** are made or brought in the United States, its territories or possessions or Canada.

7. **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

8. **Environmental laws** means any applicable federal, state, provincial or local law pursuant to which you have or may have a legal obligation to incur clean-up costs.

9. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. **Extended reporting period** means either the automatic additional period of time or the optional additional period of time, whichever is applicable, in which to report **claims** following termination of coverage, as described in Section V. of this Policy.

11. **Hostile Fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

12. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of **your product** or **your work**; or

   b. Your fulfilling the terms of the contract or agreement.

13. **Insured contract** means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for any injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering services.

14. **Insured property** means:

   a. With respect to Coverage D-1, each of the locations identified in Item 6.a. of the Declarations;

   b. With respect to Coverage D-2, each of the locations identified in Item 6.b. of the Declarations; and

   c. With respect to both Coverages D-1 and D-2, **non-owned locations**.

15. **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a **temporary worker**.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

16. **Loading or unloading** means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

b. While it is in or on an aircraft, watercraft or **auto**; or

c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

17. **Loss**, as used in Coverages D-1 and D-2, means:

a. Monetary awards or settlements of compensatory damages arising from **bodily injury** or **property damage**;

b. Costs, charges and expenses incurred in the defense, investigation or adjustment of **claims** for such compensatory damages or for **cleanup costs**;

c. **Clean-up costs**.

18. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers; or

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing;

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressor, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

19. **Non-owned location** means each of the locations, neither owned nor operated by the Named Insured, identified as a Non-Owned Covered Location in Item 6.c. or 6.d. of the Declarations.

20. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

21. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy.

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

f.  The use of another's advertising idea in your **advertisement**; or

g.  Infringing upon another's copyright, trade dress or slogan in your **advertisement**.

22. **Personal property** means any property other than real property and whatever is erected or growing upon or affixed to real property.

23. **Policy period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

a.  Cancellation of this Policy; or

b.  With respect to **insured property**:

(1) the deletion of such location(s) from this Policy by the Company; or

(2) except with respect to **non-owned locations**, the sale, leasing, giving away, abandonment or relinquishing of operational control of any **insured property**.

24. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

25. **Pollution conditions** means the discharge, dispersal, release or escape of **pollutants** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment.

26. a. **Products - completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  **products-complete operations hazard** does not include **bodily injury** or **property damage** arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the **loading or unloading** of that vehicle by an insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification listed in the Declarations or in a policy schedule, states that products - completed operations are subject to the General Aggregate Limit.

27. **Professional services** includes the following services:

a.  The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

b.  Supervisory, inspection or engineering services; and

c.  Testing, evaluation, consultation or advice.

28. **Property damage** means, with respect to Coverages A and B:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it,

**Property damage** means, with respect to Coverages D-1 and D-2:

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
AND POLLUTION LEGAL LIABILITY

c. Physical injury to or destruction of tangible property of parties other than the insured including the resulting loss of use or value thereof; or

d. Loss of use of, but not loss of value, tangible property of parties other than the insured that has not been physically injured or destroyed.

**Property damage** does not include **clean-up costs**.

29. **Responsible insured** means any **employee** of the Named Insured responsible for environmental affairs, control or compliance, or any manager, supervisor, officer, director or partner of the Named Insured.

30. **Suit** means a civil proceeding in which damages because of **bodily injury, property damage, personal and advertising injury** or **clean-up costs** to which this insurance applies are alleged. **Suit** includes:

a. An arbitration proceeding in which such damages or **clean-up costs** are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or **clean-up costs** are claimed and to which the insured submits with our consent.

31. **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

32. **Your product** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

b. The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

33. **Your work** means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

b. The providing of or failure to provide warnings or instructions.

**In Witness Whereof, we have caused this policy to be signed by our president and secretary and signed on the Declarations Page by our duly authorized representative or countersigned in states where applicable.**

*Elizabeth M. Tuck*

Elizabeth M. Tuck, Secretary

*L. H. Kelley*

Kevin Kelley, Chairman of the Board and CEO

Copyright, American International Group, Inc., 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

75342 (01/00)

## AIG ENVIRONMENTAL

### NOTICE OF LOSS/NOTICE OF CLAIM

RUCTIONS:  PLEASE ATTACH ALL CORRESPONDENCE RELATING TO THIS NOTICE OF LOSS AND MAIL
PIES OF THIS NOTICE TO THE ADDRESS BELOW:

Manager, Pollution Insurance Products Unit
AIG Technical Services, Inc.
Environmental Claims Department
80 Pine Street, 6th Floor
New York, NY 10005

Date of Notice: _____

**NAMED INSURED:** L. CARLTON MERTZ CO.

**ADDRESS OF
INSURED:**   6147 WEST 65TH STREET
CHICAGO, IL 60638-5303

**TELEPHONE:** (     ) _____
**CONTACT:** _____

**BROKER NAME:**   RBN & ASSOCIATES, INC.
ATTN: RICH SCODRO
**BROKER
ADDRESS:**   233 N MICHIGAN AVE., STE 1780
CHICAGO, IL 60601

LEPHONE: (     ) _____
NTACT: _____

**POLICY INFORMATION:**
Policy Number: EG   1955669
Policy Period: From: October 1, 2003        To: October 1, 2004

**Loss Information:**
Loss Location: _____
_____

Date & Description of Loss: _____
_____
_____
_____
_____
_____

For AIG Use Only:
Date Claim Notice Received: _____
ate of Claim: _____
mpany/Person Filing Suit (if applicable): _____

**NOTE:**  *Any person who knowingly files a Statement of Claim containing any false or misleading information is subject to
criminal and civil penalties.*

CI1141 (09/00)

ENDORSEMENT NO. 1

This endorsement, effective 12:01 AM, October 1, 2003

Forms a part of Policy No:   EG    1955669

Issued to:   L. CARLTON MERTZ CO.

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

It is agreed the following are added to Item 1 of the Declaration as Named Insureds:

- V J COMPOUNDS

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

69806 (2/98)
CI0405

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:  October 1, 2003

Forms a part of policy no.:  EG    1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY
### ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

### SCHEDULE

Name of Person or Organization (Vendor):  Blanket where required by written contract.

Your Products:  All Insured products

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to Coverages A, B and C only, WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusion's:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

ENDORSEMENT NO. 3

This endorsement, effective 12:01 AM, October 1, 2003

Forms a part of Policy No: EG  1955669

Issued to: L. CARLTON MERTZ CO.

By: AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

DISCOVERY - RESTRICTED POLLUTION COVERAGE
COVERAGES D-1 AND D-2 ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE

It is hereby agreed that the Policy is amended as follows:

1. SECTION I, Coverage D, 1. Insuring Agreements, Coverage D-1, paragraph a. is deleted in its entirety and replaced with the following:

COVERAGE D-1 - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY OR PROPERTY DAMAGE

1. We will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims** in the **coverage territory** for **bodily injury** which takes place while the person injured is on the **insured property**, or for **property damage** to personal property of a third-party which takes place while such **personal property** is on the **insured property**. All of the following requirements must be satisfied for this Coverage D-1 to apply:

    1. The **bodily injury** or **property damage** result from such **pollution conditions** and such **on-site pollution conditions** did not commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period**;

    2. An insured discovers the **pollution conditions** no later than seven (7) calendar days after its commencement;

    3. The insured reports the **pollution conditions** to us in writing no later than twenty-one (21) business days following its discovery by any insured; and

    4. A **claim** for **bodily injury** or **property damage** is first made against the insured and reported to us, in writing, during the **policy period** or any **extended reporting period** we provide under EXTENDED REPORTING PERIOD (Section V).

2. SECTION I, Coverage D, 1. Insuring Agreements, Coverage D-2, paragraph b. is deleted in its entirety and replaced with the following:

COVERAGE D-2 - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS

1. We will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims** in the **coverage territory** for **bodily injury**, **property damage** or **clean-up costs** beyond the boundaries of the **insured property**. All of the following requirements must be satisfied for this Coverage D-2 to apply:

74528 (11/99)
CI1195

ENDORSEMENT NO. 3 (Continued)

1.  The **bodily injury, property damage, or clean-up costs** result from **pollution conditions** on or under the **insured property** which have migrated beyond the boundaries of the **insured property** and such **pollution conditions** did not commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period;**

2.  An insured discovers the **pollution conditions** no later than seven (7) calendar days after its commencement;

3.  The insured reports the **pollution conditions** to us in writing no later than twenty-one (21) business days following its discovery by any insured; and

4.  A **claim** for **bodily injury property damage, or clean-up costs** is first made against the insured and reported to us, in writing, in accordance with paragraph c. below, during the **policy period** or any **extended reporting period** we provide under EXTENDED REPORTING PERIOD (Section V).

3.  **SECTION V. - EXTENDED REPORTING PERIOD - COVERAGES D-1 AND D-2,** Paragraph 2 is deleted and replaced with the following:

2.  With respect to Coverages D-1 and D-2, if we provide an **extended reporting period,** the following is added to the end of paragraph 1.a. of Section I - Coverage D-1 and paragraph 1.b. of Section I - Coverage D-2:

A **claim** first made and reported during the **extended reporting period** will be deemed to have been made on the last day of the **policy period,** provided that the **claim** arises from **pollution conditions** that commenced before the end of the **policy period** (but not before any applicable Retroactive Date) and is otherwise covered by this Policy, including but not limited to the requirements that the insured discovers the **pollution conditions** no later than seven (7) calendar days after its commencement and reports the **pollution conditions** to us in writing no later than twenty -one (21) business days following the discovery of the **pollution conditions.**

The **extended reporting period** will not reinstate or increase the Limits of Insurance or extend the **policy period.**

All other terms, conditions and exclusions shall remain the same. Nothing in this Endorsement shall be deemed or construed to increase the limits of insurance shown in the Declarations as applicable to "EACH LOSS" and the "GENERAL AGGREGATE".

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

74528 (11/99)
CI1195

ENDORSEMENT NO. 4

This endorsement, effective 12:01 AM, October 1, 2003

Forms a part of Policy No: EG    1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COVERAGE D-2, LIMITATION ENDORSEMENT
COVERAGE FOR THIRD-PARTY CLAIMS FOR
OFF-SITE BODILY INJURY OR PROPERTY DAMAGE ONLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE

It is hereby agreed that the Policy is amended as follows:

1.  **SECTION I, Coverage D, 1. Insuring Agreements**, Coverage D-2, paragraph b. is deleted in its entirety and replaced with the following:

    **COVERAGE D-2 - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY OR PROPERTY DAMAGE**

    b.  We will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims for bodily injury** or **property damage** beyond the boundaries of the **insured property**.  All of the following requirements must be satisfied for this Coverage D-2 to apply:

        (1)  The **bodily injury** or **property damage** results from **pollution conditions** on or under the **insured property** which may have migrated beyond the boundaries of the **insured property**, and such **pollution conditions** did not commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period**; and

        (2)  A **claim** for **bodily injury** or **property damage** is first made against the insured and reported to us, during the **policy period** or any **extended reporting period** we provide under EXTENDED REPORTING PERIODS (Section V).

        A **claim** for **bodily injury** or **property damage** by a person or organization will be deemed to have been made when notice of such **claim** is received and recorded by any insured.

2.  All references to **clean-up costs** under Coverage D-2 are hereby deleted.

All other terms, conditions and exclusions shall remain the same.  Nothing in this Endorsement shall be deemed or construed to increase the limits of insurance shown in the Declarations as applicable to "EACH LOSS" and the "GENERAL AGGREGATE".

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

73486 (8/99)
CI1193

Page 1 of 1

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:   October 1, 2003

Forms a part of policy no.: EG   1955669

Issued to:   L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## EMPLOYEE BENEFITS LIABILITY INSURANCE
## PROVIDES CLAIMS MADE COVERAGE

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

ADDITIONAL DECLARATIONS
LIMIT OF LIABILITY

| | |
|---|---|
| $1,000,000 | Each Wrongful Act or series of related Wrongful Acts. |
| $1,000,000 | Each Annual Aggregate |

DEDUCTIBLE

| | |
|---|---|
| $1,000 | Each Wrongful Act or series of related Wrongful Acts |

| | |
|---|---|
| No. of Employees | 0 - 200 |
| Estimated Annual Premium: | INCLUDED |

### INSURING AGREEMENTS

**EMPLOYEE BENEFITS LIABILITY**

We will pay the " **Insured** " for those sums which the " **Insured** " shall become legally obligated  to pay as damages because of any claimed against the " **Insured** " due to any " **Wrongful Act** " of the " **Insured** ",  or any other person for whose acts  the " **Insured** " is legally  liable, in the  " **Administration** " of  the " **Insured's** " " **Employee Benefits Programs** ", as defined in the Definitions  section of this policy.   This insurance applies only if a claim for damages covered by this endorsement is first made against the " **Insured** " during the policy period.  We have the right and duty to defend any suit against the " **Insured** " seeking damages on account of such negligent  act, error or omission,  even if any of the allegations  of the suit  are groundless,  false or fraudulent,  and we may make such investigation and settlement of any claim or suit as we deem expedient.

### DEFINITIONS

DEFINITION OF "Insured'

With  respect to the insurance afforded  by this endorsement  the unqualified word " **Insured** " includes the Named Insured, provided that (a) if the Named Insured is designated as an individual,  the insurance applies only to the conduct of a business of which he is the sole proprietor and (b) the unqualified word " **Insured** " also includes the following:

51767 (4/91)

A.   If the Named Insured is or includes a partnership or joint venture, any partner or member thereof by only with respect to his liability as such;

B.   Any executive officer, director or stockholder of the Named " Insured " while acting within the scope of his duties as such;

C.   Any employee, provided such employee is authorized to act in the " Administration" of the Named "Insured's Employee Benefits Program."

## DEFINITION OF "Employee Benefits Programs"

The term " Employee Benefits Programs "; means (a) group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workmen's compensation, unemployment insurance, social benefits, disability benefits, and (b) any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

## DEFINITION OF "Administration"

The unqualified word " administration " wherever used shall mean:

A.   Giving counsel to employees with respect to the Employee Benefits Programs;

B.   Interpreting the Employee Benefits Program;

C.   Handling of records in connection with the Employee Benefits Programs;

D.   Effective enrollment, termination or cancellation of employees under the " Employee Benefits Programs", provided all are acts which are authorized by the Named " Insured ".

## DEFINITION OF "Wrongful Act"

"Wrongful Act" means any actual or alleged negligent act, error or omission in the " Administration" of the Employee Benefits Plan.

### EXCLUSIONS

This endorsement does not apply to:

1.   Any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation;

2.   Bodily injury to or sickness, disease or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

3.   Any claim for failure of performance of contract by an insurer ;

4.   Any claim based upon the " Insured's " failure to comply with any law concerning workmen's compensation, unemployment insurance, social security or disability benefits;

5.   Any claim based upon:

A.   failure of any investment(s) including but not limited to stock to perform as represented by an " Insured";

B.    advice given by an " **Insured** " to an employee to participate in any investment plan including but not limited to stock subscription plans.

6.    All sums which the " **Insured** " shall become legally obligated to pay as loss because of any Breach of Fiduciary Duty (as defined below) or because of any Breach of Fiduciary Duty by any person for which the " **Insured** " is legally responsible and arising out of the " **Insured's** " activity as a fiduciary of any Plan covered by this endorsement. The term, " **Breach of Fiduciary Duty** " shall mean the violation of any of the responsibilities, obligations of duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT of 1974 or amendments thereto with respect to any Plan covered by this endorsement.

7.    Any claim made against the " **Insured** " based on or attributable to any failure or omission on the part of the " **Insured** " to effect and maintain insurance or bonding for Plan Property or Assets.

## CONDITIONS

### LIMITS OF LIABILITY

Regardless of the number of (a) " **Insureds** " under this policy (b) persons who sustain damage or (c) claims made or suits brought for such damages; the limit of liability stated in the ADDITIONAL DECLARATIONS of this endorsement as applicable to each " **Wrongful Act** " or series of related " **Wrongful Acts** " is the limit of our liability for all claims made on account of any " **Wrongful Acts** " or series of related acts by this policy for the period of liability stated in the ADDITIONAL DECLARATIONS as " **Each Annual Aggregate** " is, subject to the above provision, the total limit of our liability for all claims covered during the period this endorsement is in force.

### PREMIUM

The premium stated in the ADDITIONAL DECLARATIONS is an estimated premium only. Upon termination of each annual period of this endorsement the " **Insured** ", on request, will furnish us a statement of the total number of employees at the end of the period. The earned premium shall be computed on the average of the number of employees at the end of the coverage period and that stated in the ADDITIONAL DECLARATIONS. If the earned premium thus computed exceeds the estimated premium paid, the " **Insured** " shall pay the excess to us; if less, we shall return to the " **Insured** " the unearned portion paid by such " **Insured** ."

### DEDUCTIBLE

The deductible amount indicated in the ADDITIONAL DECLARATIONS shall be subtracted from the total amount of all sums which we are obligated to pay or incur on behalf of the " **Insured** " on account of each occurrence as stated in the ADDITIONAL DECLARATIONS.

The terms of this endorsement including those with respect to notice of claim or suit and our right to investigate and negotiate any such claim or suit, apply irrespective of the application of the deductible amount.

### OPTIONAL EXTENDED REPORTING ENDORSEMENT

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to buy a reporting endorsement. It extends the time to report covered claims. The claim must first be made against an " **Insured** " and reported to us within 3 years after the Employee Benefits Liability Endorsement ends and while the reporting endorsement is in effect. To obtain this reporting endorsement you must request it in writing and pay this additional premium within 30 days after this agreement ends. If we don't receive written notice and payment within this period, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium. This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Endorsement. Once you pay the premium we can't cancel the endorsement. We will determine the additional premium taking into account the following:

a.  The exposure " **Insured** ";
b.  Previous types and amounts of insurance;
c.  Limits of liability available under the Employee Benefit Liability Insurance for future payment of damages; and
d.  Other related factors.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any claim to which the Employee Benefits Liability Endorsement applies.

## CONFORMITY WITH STATUTE

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is issued are hereby amended to confirm to such statutes.

## OTHER TERMS OF POLICY

All other conditions, terms and exclusions contained in this policy remain unchanged.

AUTHORIZED   REPRESENTATIVE
or countersignature (where required by law)

ENDORSEMENT NO. 6

)is endorsement, effective 12:01 AM, October 1, 2003

Forms a part of Policy No:  EG    1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMPREHENSIVE POLLUTION EXCLUSION ENDORSEMENT
### INCLUDING PRODUCTS AND HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY AND
### POLLUTION LEGAL LIABILITY COVERAGE

I.   Exclusion g. **Pollution** of Section I - COVERAGES, **Coverage A,** Paragraph **2. Exclusions** is deleted in its entirety
and replaced by the following:

g.   **Pollution**

(1)   **Bodily injury** or **Property damage** which would not have occurred in whole or part but for the actual,
alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

(2)   Any loss, cost or expense arising out of any:

(a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for,
monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the
effect of **Pollutants**; or

(b)   **Claim** or **Suit** by or on behalf of a governmental authority for damages because of testing for,
monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way
responding to, or assessing the effects of **Pollutants.**

(3)   This exclusion does not apply to **Bodily injury** or **Property damage** arising out of heat, smoke or fumes
from a **Hostile fire** unless that **Hostile fire** occurred:

(a)   At or from any premises, site or location which is or was at any time used by or for any insured or other
for the handling, storage, disposal, processing or treatment of waste; or

(b)   At any premises, site or location on which any insured or any contractors or subcontractors working
directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up,
remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of
**Pollutants.**

(4)   This exclusion does not apply to that **Bodily injury** or **Property damage** arising out of **Your product** in
conjunction with the **Products-completed operations hazard** and Products-Completed Operations
Aggregate Limit, provided:

(a)   An actual discharge, dispersal, release or escape of **Pollutants** takes place:

(i)   Away from the premises that you own or rent; and

68000 (7/00)
CI0926

PAGE 1 OF 2

ENDORSEMENT NO. 6 (Continued)

    (ii) Other than from a location used for disposal of waste or other material, whether or not lawfully; and

  (b) The **Bodily injury** or **Property damage** occurs during the **Policy period**.

    (i) All **Bodily injury** caused by continuous or repeated exposure to substantially the same general harmful conditions or substances, which results in progressive, indivisible **Bodily injury** over a period of days, weeks, months or longer, shall be deemed to have occurred solely on the date of first exposure to such conditions or substances.

    (ii) All **Property damage** caused by continuous or repeated exposure to substantially the same general harmful conditions or substances, which results in progressive, indivisible **Property damage** over a period of days, weeks, months, or longer, shall be deemed to have occurred solely on the date of first exposure to such conditions or substances.

    (iii) If the date of first exposure is before the inception date of the first Commercial General Liability and Pollution Legal Liability policy we issue to you, or the date of first exposure can not be determined, and the **Bodily injury** or **Property damage** continues during this **Policy period**, then the date of first exposure will be deemed to have occurred only on the inception date of the first Commercial General Liability and Pollution Legal Liability policy we issue to you.

II. Solely with respect to coverage provided by this Endorsement, Section **VI - Definitions**, Paragraph 28., **Property damage** is deleted in its entirety and replaced with the following:

  28. **Property damage** means, with respect to **Coverages A and B**:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

    c. Loss, cost or expense arising out of the testing, monitoring, cleanup, removal, containment, treatment, detoxification, neutralization or other response to or assessment of the effect of **Pollutants**.

  **Property damage** means, with respect to **Coverages D-1 and D-2**:

    d. Physical injury to or destruction of tangible property of parties other than the insured including the resulting loss of use or value thereof; or

    e. Loss of use, but not loss of value, of tangible property of parties other than the insured that has not been physically injured or destroyed.

  **Property damage** does not include **Clean-up costs**.

All other terms, conditions, and exclusions shall remain the same.

_____
        **AUTHORIZED REPRESENTATIVE**
    or countersignature (in states where applicable)

68000 (7/00)
CI0926

ENDORSEMENT NO. 7

This endorsement, effective 12:01 AM,  October 1, 2003

Forms a part of Policy No:  EG     1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

In consideration of the premium charged, it is a condition of this policy that in the event of cancellation by the **Insured,** the premium shown on the Declarations Page of this policy shall be subject to a minimum earned premium of $6,475.00.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

77992 (5/01)
CI1430

PAGE 1 OF 1

ENDORSEMENT NO. 8

This endorsement, effective 12:01 AM, October 1, 2003

**Forms a part of Policy No:** EG    1955669

**Issued to:** L. CARLTON MERTZ CO.

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

INSURED PROPERTY(S) ENDORSEMENT FOR COVERAGE D

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE

It is agreed that the following location(s) are **insured property(s)** covered under Coverage D - POLLUTION LEGAL LIABILITY, subject to all Policy terms, conditions and exclusions, and shall be deemed listed in Item 6 of the Declarations:

INSURED PROPERTY

ITEM 6.a.    With respect to Coverage D-1, the following owned or operated locations:
6147-59 West 65th Street
Chicago, IL 60638

ITEM 6.b.    With respect to Coverage D-2, the following owned or operated locations:
6147-59 West 65th Street
Chicago, IL 60638

ITEM 6.c.    With respect to Coverage D-1, the following **non-owned locations:**

ITEM 6.d.    With respect to Coverage D-2, the following **non-owned locations:**

All other terms, conditions and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

74521 (10/00)
CI1146

PAGE 1 OF 1

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM:    October 1, 2003

Forms a part of policy no.:  EG    1955669

Issued to:   L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## PREMIUM AUDIT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that 5. Premium Audit in Section IV., CONDITIONS, is deleted in its entirety:

This policy is not subject to Premium Audit.

All other terms, conditions and exclusions remain the same

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

69702 (2/98)

ENDORSEMENT NO. 10

s endorsement, effective 12:01 AM, October 1, 2003

Forms a part of Policy No: EG   1955669

Issued to:   L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT - ILLINOIS

It is hereby agreed that in the event of failure of American International Specialty Lines Insurance Company (hereinafter called the Company ) to pay any amount claimed to be due hereunder the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company s rights to commence an action in any court of competent jurisdiction in the United Sates to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street, New York, New York 10270 or his or her representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, e Company hereby designates the Superintendent, Commissioner, or Director of Insurance, other officer specified for at purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom y be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates President, Midwestern Risk Specialists, Inc., 500 West Madison, Chicago, Illinois 60661-2511, or the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

80145 (5/02)
CI1828

PAGE 1 OF 1

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:   October 1, 2003

Forms a part of policy no.:  EG     1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US - COVERAGES A, B AND C

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY

### SCHEDULE

Name of Person or Organization:   Blanket where required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV - Conditions) is amended by the addition of the following:

With respect  Coverages A, B and C only, we waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard."  This waiver applies only to the person or organization shown in the Schedule above.

_____

**AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)**

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.
Insurance Services Office, Inc., 1992

65387 (5/96)                                                                                                          PAGE 1 OF 1

ENDORSEMENT NO. 12

This endorsement, effective 12:01 AM, October 1, 2003

Forms a part of Policy No: EG    1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### TERRORISM EXCLUSION - ALL TERRORISM (INCLUDING CERTIFIED ACTS OF TERRORISM) EXCLUSION ENDORSEMENT

Pursuant to the requirements of the Terrorism Risk Insurance Act of 2002, the "Act," the **Insured** has been provided notice that the **Insured** may elect to purchase coverage for loss covered under this Policy arising directly or indirectly as a result of a certified "act of terrorism" as defined by Section 102. Definitions, of the Act and any revisions or amendments thereto and the premium charge for such coverage.

After receiving such notice, the **Insured** has elected not to purchase coverage for such certified "acts of terrorism" and has agreed to the inclusion of a Terrorism Exclusion. Therefore, this Policy is amended to include the following exclusion:

The Company has no obligation to make any payment or to provide or to pay for a defense under this Policy due to or arising directly or indirectly as a result of or in connection with **Terrorism** including but not limited to, any contemporaneous or ensuing loss caused by fire, looting, or theft.

**Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

The defined term **Terrorism** shall specifically include, but is not limited to, the following definition of a certified "Act of Terrorism" defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments thereto:

(1)  Act of Terrorism -
   (A)  Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States -
     (i)  to be an act of terrorism;
     (ii)  to be a violent act or an act that is dangerous to -
       (I)  human life;
       (II)  property; or
       (III)  infrastructure;
     (iii)  to have resulted in damage within the United States, or outside of the United States in the case of -
       (I)  an air carrier or vessel described in paragraph (5)(B); for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission ;
       (II)  the premises of a United States mission; and

81268 (12/02)
CI1966
FOR USE TO EXCLUDE ALL TERRORISM REJECTION OF CERTIFIED ACTS OF TERRORISM.

**ENDORSEMENT NO. 12 (Continued)**

(iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

(B) Limitation. - No act shall be certified by the Secretary as an act of terrorism if -

　(i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

　(ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C) Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

81268 (12/02)
CI1966

PAGE 2 OF 2

FOR USE TO EXCLUDE ALL TERRORISM REJECTION OF CERTIFIED ACTS OF TERRORISM.

ENDORSEMENT NO. 13

is endorsement, effective 12:01 AM,  October 1, 2003

Forms a part of Policy No:  EG    1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

WAR EXCLUSION ENDORSEMENT

1.  It is hereby agreed that the following exclusion is added to **SECTION I - COVERAGES, COVERAGE B. - PERSONAL AND ADVERTISING INJURY LIABILITY,** Subsection **2.,** Exclusions:

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

2.  It is hereby agreed that the following exclusion is added to **SECTION I - COVERAGES, COVERAGE C. - MEDICAL PAYMENTS,** Subsection **2.,** Exclusions:

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

It is hereby agreed that the following exclusion is added to **SECTION I - COVERAGES, COVERAGE D. - POLLUTION LEGAL LIABILITY,** Subsection **2.,** Exclusions:

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, factional civil commotion, military or usurped power, rebellion or revolution.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

79106 (12/01)
Cl1633

PAGE 1 OF 1

ENDORSEMENT No. 14

This endorsement, effective 12:01 AM:   October 1, 2003

Forms a part of policy no.:  EG    1955669

Issued to:  L. CARLTON MERTZ CO.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### COVERAGE A, B, C, D LIMITATION ENDORSEMENT
### UNDERGROUND STORAGE TANK EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that the Policy is amended as follows:

1.    Section 1, Coverages A, B, and C of this Policy are amended as follows:

This insurance does not apply to **bodily injury, property damage, personal** and **advertising injury** and any **loss** costs or expenses arising out of the ownership, use or operation of any underground storage tanks owned by an insured.

2.    Section 1, Coverage D of this Policy is amended as follows:

This insurance does not apply to any **claim** arising from **pollution conditions** emanating from any underground storage tank unless satisfactory integrity test results (under our approved method) are received and approved by and are on file with the underwriter.  Coverage is available only for those underground storage tanks specifically approved in writing by the underwriter and scheduled in the Policy by endorsement.

For the purpose of this endorsement, an underground storage tank is any tank, including associated underground piping connected to the tank, that has at least ten (10) percent of its volume below ground.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

(Optional-Can be used with all Commercial General Liability and Pollution Legal Liability
Coverage Forms - 73540(9/99), 73541(9/99), 75340(10/99), 75342(10/99), 75344(10/99), and
75346(10/99))

ENDORSEMENT NO. 15

This endorsement, effective 12:01 AM:   October 1, 2003

Forms a part of policy no.:   EG     1955669

Issued to:   L. CARLTON MERTZ CO.

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COVERAGE D - 2, LIMITATION ENDORSEMENT -
COVERAGE FOR THIRD-PARTY CLAIMS FOR
OFF-SITE BODILY INJURY OR PROPERTY DAMAGE ONLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that the Policy is amended as follows:

1.       SECTION I, Coverage D, 1.  Insuring Agreements, Coverage D-2, paragraph  b. is
deleted in its entirety and replaced with the following:

COVERAGE D-2  -  THIRD-PARTY CLAIMS  FOR OFF-SITE  BODILY INJURY  OR
PROPERTY DAMAGE

b.  We will pay those sums  that the insured becomes legally obligated to pay as
loss because  of claims  for bodily injury  or property damage  beyond the
boundaries of the insured property.  All  of the following requirements  must
be satisfied for this Coverage D-2 to apply:

(1)  The bodily injury  or property damage  results from  pollution conditions
on or under the insured  property which may have  migrated beyond the
boundaries of  the insured property, and such  pollution conditions  did
not commence before the Retroactive Date, if any, shown in  the
Declarations or after the end of the  policy period, and

(2)  A  claim for bodily injury or  property damage  is first made against the
insured and  reported to us, during  the policy period or any extended
reporting period  we provide under  EXTENDED REPORTING  PERIODS
(Section V).

A claim for bodily injury or  property damage by a person  or organization will be
deemed to have been made when  notice of such claim is  received and recorded
by any insured.

**ENDORSEMENT NO. 15 (Continued)**

2.          All references to clean-up costs under Coverage D-2 are hereby deleted.

All other terms, conditions and exclusions shall remain the same.  Nothing in this Endorsement shall
be deemed or construed to increase the limits of insurance shown in the Declarations as applicable
to "EACH LOSS" and the "GENERAL AGGREGATE".

All other terms, conditions and exclusions remain the same.

---

**Authorized Representative
or countersignature (where required by law)**

# AIG ENVIRONMENTAL PIER II PROGRAM

Insured:    L. CARLTON MERTZ CO.
Policy #:    EG 1955669

Congratulations for choosing AIG Environmental® as your insurance provider! Among other things, your decision allows you access to the Pollution Incident and Environmental Response (PIER II) Program. This program is designed to assist you with your environmental response to catastrophic events or releases at your facility or facilities.

Enclosed you will find:
- Question and Answers regarding the PIER II Program
- PIER II Registration Form

Please complete the enclosed registration form to allow us to have the correct contacts for providing environmental management services if an environmental emergency should occur at your facility or facilities. A postage paid envelope is enclosed for your convenience.

The PIER Program has a toll-free telephone number **1 (877) PIER NOW** (877.743.7669) in case of an emergency. You may follow the guidelines below to determine when to call for PIER II program services.

**Call PIER II when:**

- A significant amount of hazardous materials is released onto the ground, soil, into the storm drain, or sewer.
- Abnormal amounts of hazardous vapors are detected.

**Do not Call PIER II for:**

- Regulatory inspections
- Purposes of satisfying claim-reporting requirements.

Enrolling in this service allows us to provide you with one number to call for assistance with your emergency response when it really matters; potentially reducing insurance claims, remediation costs, and environmental contamination.

If you have any questions about the application or general questions about the PIER II Program please call 1-800-348-4314 and ask for Department Code PIER II.

Thank you,

PIER Program Manager
AIG Consultants-Environmental Management Division
One MacArthur Place, 6th Floor
South Coast Metro, CA 92707
Email: PIER@aig.com

# AIG ENVIRONMENTAL PIER II REGISTRATION FORM

Brian Johnson
PIER II Program Manager
AIG Consultants-Environmental Management Division
One MacArthur Place, 6th Floor
South Coast Metro, CA 92707

## Policy Holder Information:

Policy #: _____

Named Insured _____

Phone number: _____

Contact Name: _____

Fax number: _____

Mailing Address: _____

County: _____

City: _____

State ZIP: _____

## Emergency Contact Information:

☐ Check here if the emergency contact is not the same for every facility under this policy. AIG will contact you for more information.

**Primary Contact:** (must be filled in)

Daytime Phone: _____

Name: _____

Nighttime Phone: _____

Mailing Address: _____

City: _____

State ZIP: _____

**Secondary Contact:** (must be filled in)

Daytime Phone: _____

Name: _____

Nighttime Phone: _____

Mailing Address: _____

City: _____

State ZIP: _____

PAGE



# AIG Environmental
## A Division of American International Companies®

**To:**　L. CARLTON MERTZ CO.
**From:**　AIG Environmental
**Date:**　10/23/2003
**Re:**　PIER II Program Q & A

---

**Q. What exactly is the PIER II Program?**
A. The Pollution Incident and Environmental Response (PIER II) Program is designed to assist you when you have determined that additional emergency response capabilities and services are necessary to respond to your environmental pollution incident. PIER II resources include a national network of emergency response contractors and environmental consultants. Additionally, project management services will be provided by AIG Consultants-Environmental Management Division (AIGC-EM). AIGC-EM will be in communication with both you and the emergency responder during the incident to make sure that all resources of the PIER II Program are made available to you.

**Q. Why should I use the PIER II Program?**
A. The PIER II Program provides you with a national network of emergency response resources with just one phone call. As an AIG Environmental client, you will benefit from reduced rates that have already been negotiated for you. In addition to providing you with the management services of an AIGC-EM Program Manager, PIER II also offers investigative services, adjusting services, and a crisis management advisory board that can be utilized.

**Q. How do I access the PIER II Program when I have an emergency?**
A. To access the PIER II Program 24 hours a day, simply dial toll-free *1-877 PIER NOW* **(877.743.7669)** and you will be connected to the Emergency Response Hotline. Enter your call-back number, and the on-call AIGC-EM PIER Program Manager will return your page, collect vital information, and dispatch the emergency response services that you require.

**Q. What are my responsibilities through the response process?**
A. As the responsible party, you are ultimately responsible for responding to your environmental pollution incident. The PIER II Program is offered to assist you in the overall incident response and management process.

**Q. Are my claim reporting requirements satisfied by accessing the PIER II Program?**
A. No. Please refer to your policy for claim reporting requirements.

**Q. By being a participant in PIER II, does this mean that my claim is automatically covered by AIG? If not, who pays for the PIER II services?**

A.   Coverage will be determined by the claims department after a factual analysis of the incident and the insurance policy.  Covered costs will be paid or reimbursed up to the limit of the policy and subject to any deductible or retention amount.  If the incident is not covered by the policy, then you will be responsible for payment of the response.  In either situation, you will benefit from the pre-negotiated low rates.

**Q.   What do I need to do to sign up for the PIER II Program?**

A.   The best thing to do is to register for the PIER II Program using the registration form included in this packet. The PIER Program Manager listed below can then contact you to provide you with more information.

**Q.   Who should I contact to discuss the PIER II Progam?**

A.   To discuss the PIER II Program benefits and to register your company for PIER II Program services, contact:

PIER Program Manager
AIG Consultants, Inc.
Environmental Mgmt. Division
One MacArthur Place., 6th Floor
South Coast Metro, CA  92707
Phone: 1-800-348-4314 ask for Department Code PIER II
Email: PIER@aig.com

# AIG ENVIRONMENTAL PIER II REGISTRATION FORM
## (continued)

***Site specific information*** * (Physical addresses, not mailing addresses)    * Please copy for additional sites.

Facility #:
Facility Name:
Address 1:
Address 2:
City:
State:
Zip:
Facility Type:
Comments:

Facility #:
Facility Name:
Address 1:
Address 2:
City:
State:
Zip:
Facility Type:
Comments:

Facility #:
Facility Name:
Address 1:
Address 2:
City:
State:
Zip:
Facility Type:
Comments:

Facility #:
Facility Name:
Address 1:
Address 2:
City:
State:
Zip:
Facility Type:
Comments:

Facility #:
Facility Name:
Address 1:
Address 2:
City:
State:
Zip:
Facility Type:
Comments:

Facility #:
Facility Name:
Address 1:
Address 2:
City:
State:
Zip:
Facility Type:
Comments:

08CV1738  PH
JUDGE KENNELLY
MAGISTRATE JUDGE COX

# EXHIBIT B



March 12, 2007

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>
<u>And via Regular First Class Mail.</u>

Vishnu Gor
c/o Patrick J. McGuire, Esq.
111 W. Washington St., Ste. 802
Chicago, IL 60602

|   |   |   |
|---|---|---|
| Re: | Insured: | V.J. Compounding, Inc., d/b/a L. Carlton Mertz Co. |
|  | Policy No.: | ESP1402450 |
|  | Date of Loss: | March 5, 2004 |
|  | Loss Location: | 6147 W. 65th Street, Bedford Park, IL 60636 |
|  | Our Claim No.: | 4CCN031 |

Dear Mr. Gor:

On behalf of VJ Compounding, Inc. d/b/a L. Carlton Mertz Co. (hereinafter referred to as "VJ Compounding"), you previously submitted a claim for alleged damages arising out of partial roof collapse on March 5, 2004 at a facility located at 6147 W. 65th Street in Bedford Park, Illinois. Based upon our investigation and the information available, we hereby deny coverage under Commercial Property Insurance Policy No. ESP 1402450 (the "Policy") issued by Seneca Insurance Company ("Seneca").

The Common Policy Conditions Form contained in the Policy provides, in pertinent part, that:

All Coverage Parts included in this policy are subject to the following conditions.

\*   \*   \*

Page 2

### C.  Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

The Building and Personal Property Coverage Form contained in the Policy provides, in pertinent part, that:

### E.  LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
*   *   *

### 3.  Duties In The Event Of Loss Or Damage

a.    You must see that the following are done in the event of loss or damage to Covered Property:
*   *   *

(5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)    Cooperate with us in the investigation or settlement of the claim.

b.    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this

Page 3

> insurance or the claim, including an insured's books and records.

The Policy's Business Income (And Extra Expense) Coverage Form, provides, in pertinent part, that:

* * *

### C. Loss Conditions

The following conditions in addition to the Common Policy Conditions and the Commercial Property Conditions

* * *

### 2. Duties In The Event Of Loss

a. You must see that the following are done in the event of loss:

* * *

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

* * *

b. We may examine any insured under oath, while not in the presence of any other insured and as such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

VJ Compounding has violated the foregoing provisions of the Policy by failing to give costs, values and amounts of the losses claimed; provide books and records for examination; provide a proof of loss containing information requested to investigate the claim; return signed examination answers; and cooperate in the investigation of the claim.

Page 4

Please be advised that the Policy also contains the following:

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Based upon the foregoing provision in the Policy, legal action against Seneca will be precluded because there has not been full compliance with the Policy and the time to file suit has expired.

Nothing contained in this letter is, nor should be construed by you to be, a waiver of any of the rights of Seneca under the Policy or under the law. Seneca does not, by the identification of any specific basis for the denial of your claim, intend to waive, or be estopped from asserting, any other provisions of the Policy which are, or which may become, applicable to your claim.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 W. Randolph Street, Suite 15-100, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Should you have any questions regarding the foregoing, or should you have any other information that may bear on your claim, please do not hesitate to contact the undersigned.

Very truly yours,

SENECA INSURANCE CO.

By: Gregory A. Crapanzano
Sr. Property Adjuster

4